## CORNELIUS MCCARTHY *vs.* JOHN FOSTER.

Suffolk.   March 8, 1892. — June 22, 1892.

Present: FIELD, C. J., HOLMES, KNOWLTON, LATHROP, & BARKER, JJ.

*Personal Injuries — Due Care — Owner of Premises.*

An employee of the lessee of a store, knowing that all persons were forbidden by notices plainly posted, and with which he was familiar, to pass up or down upon an elevator while in motion, attempted to start the elevator in a mode which necessarily required him to be upon it while in motion, and the elevator fell and he was injured. *Held,* in an action for personal injuries against the lessor of the premises, that the plaintiff had no right to use the elevator as he was using it at the time of the accident, and the fact that he and others habitu· ally disregarded the notices and rode up and down in violation of them, could not favorably affect his case, as the defendant was not in possession of the store, and had no notice that the elevator was used except for merchandise. *Held, also,* that it made no difference that, owing to the piling of merchandise against the slats enclosing the elevator well, the elevator could not be started from that floor of the store except by standing on the elevator platform, or that there was some danger in starting it by handling the shipper ropes with the arm between the slats.

TORT for personal injuries occasioned to the plaintiff by the falling of an elevator in a warehouse belonging to the defendant.

Trial in the Superior Court, before *Hammond*, J., who reported the case for the determination of this court, in substance as follows.

There was evidence tending to show that the plaintiff had been long employed as a porter by one Dallinger, and that on August 19, 1889, he was employed by Dallinger in his warehouse on Broad Street in Boston, which warehouse Dallinger leased of the defendant; that there was an elevator on the premises used for hoisting and lowering merchandise; that the elevator machine was situated in the top story of the leased premises, open to view; that the steam power which ran this elevator was furnished by the defendant, in accordance with a contract in the lease, from a power-house separate from the leased premises; that in this power-house was the engine from which said elevator and several other elevators in adjoining buildings were operated, and that this engine, together with all the machinery which transmitted the power to the various ele-

vating machines, was under the defendant's exclusive management and control, and the engineer in charge of this engine was employed by the defendant, and oiled the machinery on the premises leased to Dallinger; that ever since the plaintiff's employment there had been notices on the elevator signed by the defendant, stating that the elevator was for freight only, and forbidding persons from riding upon it; that the plaintiff had seen and read the notices before the accident occurred; that he understood the notices, but in spite of them was accustomed to ride on the elevator; that on the afternoon of August 19, 1889, the plaintiff went to the fourth floor of the building in company with two other servants of Dallinger, and there they placed on the elevator two cases of goods and a truck, weighing about seven hundred pounds in all; that the sides of the elevator were cased off from the lofts by strips of wood or scantling, between four and five inches apart; that within and on one side of the elevator well — to wit, left hand side as you enter from the front, the rear being against the wall of the building — were the two shipper ropes connecting with three pulleys on the top floor, running clear of the elevator and outside of its line of passage within the well; that the elevator was started down by pulling the right hand one down, and up by pulling the left hand one down, and could also be started either way by either one of the shipper ropes alone by an opposite motion; that there were goods piled up against the side of the elevator on the fourth floor where the shipper ropes were, and that in order to start the elevator the plaintiff had to step upon it; that on this occasion he did so, and then turned to his left, took hold of the ropes, pulled down the right one, but the rope did not come; then he pulled again and the rope did not come, but the elevator was moving; that he put both hands on the rope to bring it, and pulled all he could, and the rope did not come as it usually did, but the elevator descended quickly; that he was flustered, tried the other rope, which would have a tendency to take the elevator up; and that he tried to catch hold of the cleats on the side of the elevator, but could not hold on and had to go down with the elevator, which was precipitated into the cellar, and he was seriously injured.

The plaintiff testified that there was no other way for him to

start the elevator than that which he adopted, because the sides of the elevator well were so piled up with goods that he could not reach the ropes by there putting his hands between the scantlings, but was obliged to enter it from the front; and he further testified, on cross-examination, that the storing of the goods about the side of the well was done either by himself or under the direction of Dallinger; that the defendant, Foster, had nothing to do with it, and that Dallinger occupied the whole building.

The jury took a view, saw the elevator raised and lowered by the defendant's engineer, without going upon the elevator, by standing at the side of the elevator well and pulling the shipper ropes, which were without the line of passage of the elevator. This was done in every floor, except where goods were so piled about the elevator well as to make it impossible to get to the left hand side of the well, where and within which the shipper ropes were situated.

The judge directed a verdict for the defendant. If the ruling was wrong, the verdict was to be set aside; otherwise, judgment was to be entered upon the verdict.

*J. D. Long & A. J. Selfridge*, for the plaintiff.

*L. S. Dabney & R. Foster*, for the defendant.

BARKER, J. It is unnecessary to consider whether there was evidence upon which the jury could find obligation and negligence on the part of the defendant, since we are of the opinion that upon the evidence the plaintiff cannot recover, because, as against the defendant, he had no right to use the elevator as he was using it at the time of the accident.

The elevator with which he fell was for merchandise only. He had operated it for years, and was perfectly familiar with its construction and its use. He knew that all persons were forbidden to pass up or down upon it, by notices plainly posted, and with which he was familiar. That he and others habitually disregarded them, and rode up and down in violation of them, cannot favorably affect his case against the defendant, as the latter was not in possession of the store, and had no notice that the elevator was used except for merchandise. The notices fairly construed forbade being upon the elevator while it was in motion; for one must be passing either up or down upon it, if

upon it while it was in motion. When it was stationary, and at the level of the floor, the plaintiff had the right to go and to be upon it to load or to unload merchandise; but, under the terms of the notice, he had no right to be upon it for any purpose when it was passing up or down. As the mode of putting it in motion by pulling the shipper ropes when standing on the elevator involved his being upon it while it was in motion, that mode of starting it was forbidden, and it was improper for him to use it. He used it at his own risk, and for an injury resulting in the act of so using it the defendant is not responsible to him.

It makes no difference that, owing to the piling of merchandise against the slats enclosing the elevator well, the elevator could not be started from that floor of the store except by standing upon the elevator platform, or that there was some danger in starting it by handling the shipper ropes with the arm between the slats. The defendant was not in possession of the store, and was under no obligation to the plaintiff for faults in the plan or construction of the elevator; and so far as the defendant was concerned, the plaintiff had accepted the risks resulting from such faults, which, if they existed, were obvious.

The piling of the merchandise against the slats was the act of the plaintiff's own employer and of his servants, including the plaintiff himself, who seems to have been chiefly responsible for it, he having charge of the placing of the merchandise. The defendant was in no way responsible for it, and had no control over it; and, as against him, it forms no element of liability.

As against the defendant, the plaintiff had no right to be in the elevator for the purpose for which he was there when it fell, and he had fair notice and warning not to be there, and the defendant is not bound to compensate him for injuries sustained by reason of his presence in the elevator for a purpose necessarily involving passing up or down upon it, which was forbidden. He had no right to be upon the elevator when it was in motion at all.

*Judgment on the verdict.*