### WEST PUB. CO. v. LAWYERS' CO-OPERATIVE PUB. CO.

(Circuit Court of Appeals, Second Circuit. April 8, 1897.)

1. COPYRIGHT—SYLLABI OF LAW REPORTS—INFRINGEMENT.
   A copyrighted syllabus to a legal opinion may be infringed without reproducing its original language. It is the unfair appropriation of the original compiler's labor that constitutes the offense. Identity of language will often prove that the offense was committed, but it is not the sole proof; and, when the offense is proved, relief will be afforded, irrespective of any similarity of language.

2. SAME—INTERNAL EVIDENCE OF INFRINGEMENT—PRESUMPTIONS.
   When it is conclusively shown from internal evidence that a subsequent digester has made an unfair use of any part of a syllabus of his predecessor, it is not to be presumed that he availed himself of the prior syllabus only to the extent appearing on the face of his work. Rather, the burden of proof will be upon him to show that there were parts of the syllabus that he did not use.

3. SAME—ADMISSIBILITY OF EVIDENCE—OPINION EVIDENCE.
   Testimony of witnesses who have compared copyrighted syllabi of legal opinions and alleged infringing digest paragraphs with the opinions themselves, as to their general conclusions on the question of infringement, cannot be accepted as evidence; but, where they also point out similarities of language and other indicia of infringement, the testimony should not be wholly rejected, as it is of great aid to the court in making the laborious examination required in order to reach a conclusion.

4. SAME—INFRINGING DIGESTS—PRIMA FACIE CASE FROM INTERNAL EVIDENCE—DENIALS.

Defendant's editors digested some 13,300 cases from complainant's pamphlet reporters. These pamphlets were placed in their hands without eliminating or covering up the copyrighted syllabi. A partial comparison of these syllabi with their digest paragraphs showed internal evidence of piracy in some 400 instances. In one volume 10 instances were found in 16 pamphlets, and 7 instances in 1 pamphlet; in another, 4 instances in 9 pamphlets. In another volume piracies were found in half the pamphlets; in another, in 11 out of 12 pamphlets, 8 instances occurring in a single pamphlet; in another, in 7 out of 10 pamphlets; in another, 7 instances in a single pamphlet; in still another, in 11 out of 13 pamphlets; and in one single pamphlet, of less than 100 pages, 14 instances. *Held,* that this evidence, aside from other proofs, indicated a general, systematic, and widespread unfair use of the copyrighted work, coupled with an attempt to disguise such use, and made out a prima facie case, which was not rebutted by a simple denial by all defendant's editors that they had made any use whatever of complainant's syllabi.

5. SAME—REBUTTAL OF PRIMA FACIE CASE.

It appeared, however, that defendant's principal editor had digested some 7,000 of the entire 13,300 cases digested from complainant's pamphlets. Two of these cases were found to contain suggestive verbal identities, but no errors in common with the syllabi. *Held,* that the denial of such editor that he had made any use of the syllabi was sufficient to rebut complainant's prima facie case, so far as concerned his own work.

6. SAME—COMPARATIVE SPEED OF DIGESTERS—WEIGHT OF EVIDENCE—DISCRETION OF COURT.

As tending to show an unfair use of its syllabi, complainant showed that defendant's regular and experienced editors digested from 20 to 40 cases per day, while complainant's own editors, working from the opinions alone, averaged only from 4 to 7 cases a day. An independent witness, the official reporter of the court of appeals of New York, with 21 years' experience, testified that he had not been able to do over 7 cases a day, and that his average was about 4. Thereupon defendant offered to produce some of its editors, who, in the master's presence, with cases of average length to be selected by him, would, under conditions insuring fairness, show their rate of speed in original work. *Held,* that it was in the discretion of the court to reject this offer, on complainant's objection; that the rate of speed attained under such conditions would not fairly represent the average speed for weeks and months continuously, under varying conditions, mental and physical; and that, on the whole, not much weight was to be attached to the argument from the rate of speed, as, to be of much value, the character of the digest paragraphs would have to be carefully investigated.

7. SAME—MINGLING OF PIRATED AND ORIGINAL MATTER—FAILURE TO SEGREGATE—SCOPE OF INJUNCTION AND ACCOUNTING.

Defendant's digest covered 19,000 cases, of which at least 13,300, or about 70 per cent., were digested by its editors from complainant's pamphlet reporters with copyrighted syllabi. Nearly 6,000 of these cases were prepared by editors who repeatedly and systematically made an unfair use of the copyrighted work, in order to save themselves the time and labor of original investigation; endeavoring, sometimes successfully and sometimes not, to conceal the fact of such unfair use. The remaining 7,300 cases were digested by editors who, on the proofs, probably made no unfair use of complainant's work. As a result, complainant's copyrighted work was in part, at least, appropriated by defendant, and so mingled with original matter that no one but the offending editors could segregate the pirated from the original matter; and defendant failed to produce their testimony on this point. *Held,* that the whole work, excepting the paragraphs digested from original sources, should be enjoined, with liberty to defendant, however, to show, by further proofs, which paragraphs were digested by its nonoffending editors, and to move to have them

excluded from the injunction; plaintiff, in that event, to have the privilege of adducing further proofs to show unfair use by these latter editors.

Appeal from the Circuit Court of the United States for the Northern District of New York.

This is an appeal from decrees of the circuit court, Northern district of New York, in favor of complainant, in a suit brought for infringement of copyright. The interlocutory decree (53 Fed. 265) enjoined the further publication of a certain number of specified paragraphs, which the master and the court found to infringe; and the final decree (64 Fed. 360) awarded six cents as profits which accrued to defendant from the sale of books containing such paragraphs, with costs. The defendant did not appeal. The facts will be found fully stated in the opinion.

Frank P. Prichard, for appellant.
William F. Cogswell, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. Before considering the merits, a question of evidence presented by the appellee may be disposed of. Having properly reserved an exception to its admission, defendant moved to strike out certain testimony as incompetent. The circuit court denied the motion; stating, however, that the testimony would be ignored, since it was obnoxious to the objection. The testimony complained of is this: Complainant had prepared exhibits displaying, in parallel columns, certain paragraphs of complainant's copyrighted books, which it was asserted were infringed, and corresponding paragraphs from defendant's publication, which were asserted to be such infringements. Witnesses were then called who testified that they had compared these parallel columns with the original court opinions, of which such paragraphs were claimed to be syllabi, and thereupon gave the results of such comparison; in some instances pointing out similarity of language, and other indicia tending to show infringement, and in other cases testifying generally to the opinions they had formed from their examination. This testimony was not, in any true sense, proof of infringement. Whether an examination and comparison of any particular group of contrasted paragraphs with the original sources from which, as it is contended, such paragraphs are derived, does or does not afford internal evidence of literary piracy, is a matter which must be determined by the court or the master. Unfortunately for the court, there is no easy substitute for the laborious work of such comparison. It is the court's judgment, and not that of the witness, which must ultimately determine the question. It does not follow, however, in a case like this, that such evidence should have been rejected altogether. So far as it refers to specific instances, and points out comparisons on which reliance is placed by either side, it is of incalculable value to the court in facilitating such examination. Without the elaborate exhibits in this case, and the comments thereon which point out the specific points contended for, it would have required months of time for the court to have reached any reasonably adequate conception of the merits of the

litigation.   Referring to similar testimony in Lawrence v. Dana, 4
Cliff. 1, Fed. Cas. No. 8,136, the court says:

"Though admissible in all such cases, the opinions of experts are nevertheless,
in their nature, secondary evidence; but the comparisons made by them
* * * have very much facilitated the investigations made by the court. Con-
siderable aid has been derived from that source * * *; but the court has
found it necessary to re-examine the comparisons made by the witnesses, and
to make others for themselves, in order to come to a satisfactory conclusion.
Regarded as a basis to enable the court to compare one book with the other,
the results given by the experts * * * have proved of great service to the
court in estimating the weight to be given to their respective opinions."

The facts of the case at bar are as follows:   Complainant is
the publisher of a system of reports, appearing weekly, and con-
taining all the opinions of various courts, with syllabi, statements
of facts, etc., prepared by complainant's editors.   These are the
well-known "Reporters," such as Atlantic Reporter, Southeastern
Reporter, Federal Reporter, etc.   In connection with this series of
reports, complainant published in monthly parts a digest of the
cases, prepared from the syllabi, and consolidated at the end of
each current year (about September 1st) into an annual volume,
known as the "American Digest."   Both the reports and the digests
were copyrighted.   Defendant was the publisher of a rival series
of reports, appearing weekly, and containing selected opinions,
edited, with syllabi, statements of facts, etc.   In connection with
this series of reports (known as "Lawyers' Reports Annotated") de-
fendant also published, in semimonthly parts, a digest of all the
opinions of various courts, consolidated at the end of the year
into an annual, known as the "General Digest."   The two systems
were in active competition, and the two digests, both as periodical
issues and in completed form, were rival publications, each pur-
porting to cover practically the whole field of case law enunciated
by all courts of last resort in the United States for the year.   De-
fendant's digest year ended about the same time as complainant's,
and this suit is concerned with the publication of the respective
parties for the year ending September, 1892; it being contended
by complainant that, in preparing the paragraphs which stated the
law or facts in cases digested in defendant's publication, its editors
had substantially appropriated the labors of complainant's editors
(as found in the syllabi of the Reporters, and in the paragraphs of
complainant's digest) to such an extent as to infringe complainant's
copyrights.   The answer denied such use.

Defendant's digest was prepared in part from publications not
protected by complainant's copyrights.   These publications include
the opinions of the United States supreme court, as published in
advance sheets by that court, certain English and Canadian re-
ports, reports of certain intermediate appellate courts of Missouri
and Illinois, reports of lower courts in Ohio and Pennsylvania, the
District of Columbia cases, the court of claims reports, and the
interstate commerce commission reports.   Inasmuch as none of the
syllabi of these reports are covered by complainant's copyrights,
this suit is in no way concerned with them.   The evidence is not
specific as to the number of such cases included in defendant's di-

gest, although it would seem to be an easy matter to count them, but it does appear affirmatively that they aggregate a comparatively small fraction of the whole. The complainant contends that such fraction is about one-tenth. The circuit court finds it to be about 30 per cent. We do not find sufficient evidence to sustain such finding, but it is not now necessary to determine the precise amount. It is easily ascertainable, and for the purposes of this appeal it is sufficiently proved that the great majority of the paragraphs in defendant's digest were prepared by editors who had before them in each case only the opinion of the court as printed in complainant's reports, with complainant's copyrighted syllabi and notes. The total number of cases digested in defendant's publication is about 19,000, distributed into some 38,000 paragraphs.

Upon a motion for a preliminary injunction complainant, as evidence of the unfair use of its work, presented an exhibit of 55 paragraphs taken from different parts of defendant's digest, which it was contended showed on their face that they were taken from plaintiff's syllabi. Subsequently complainant presented an exhibit of 108 additional paragraphs of a similar character. The court referred the matter to a master to report what, if any, portions or paragraphs of defendant's digest infringed plaintiff's copyrights. Before the master, and within a limited time fixed by him, plaintiff presented an exhibit of 548 paragraphs (including the 163 originally produced) which it contended showed upon their face conclusive evidence of piracy, and much oral testimony was taken. The master reported that, of these 548 paragraphs, 303 "appear to have infringed the copyright." It is quite apparent from his report that the testimony given before him, and the extended comparison which he made, satisfied him that a much more comprehensive report might be made, but that he was confined by the order of reference to a consideration of the specific paragraphs "presented to him," and that he was to report only cases "which seem to be, from themselves, in connection with the opinions" (i. e. where internal evidence alone showed them to be) clearly cases of piracy. The court granted a preliminary injunction, confined strictly to "the instances of piracy found by the master." All the evidence taken down to that time, whether by affidavit, deposition, or otherwise, including the exhibits, and some additional testimony, made up the record upon which the case was presented to the circuit court at final hearing. Complainant at such hearing presented, in the form of a supplemental brief, a further exhibit, containing several hundred additional paragraphs alleged to be infringements, and printed in parallel columns, with corresponding copyrighted paragraphs; stating that if the court adhered to its former ruling, that only such paragraphs should be enjoined as showed on their face, and without reference to the general proofs, that they were pirated, counsel would not ask the court to undertake the labor of making comparisions. If, however, the court should undertake to decide whether or not there had been a general unfair use of complainant's work, the supplemental brief was submitted as a convenient guide to additional internal evidence bearing upon that issue. The circuit court adhered to its former ruling, enjoined the 303 paragraphs, and ordered an account-

ing of profits therefrom. It proved, of course, to be impossible to segregate the profits for these specific paragraphs, and complainant obtained a final decree for six cents and costs. Defendant has not appealed from the finding as to the 303 paragraphs, but complainant has appealed, contending that it was entitled to more extensive relief. The opinion of the circuit court will be found in 64 Fed. 360. The following excerpts succinctly state the law governing cases such as this:

"A reporter [of opinions of a court] may acquire a valid copyright for the headnotes, footnotes, tables of cases, indexes, statements of facts, and abstracts of the arguments of counsel, where these are prepared by him and are the result of his labor and research. So he may have a copyright for a digest or synopsis of judicial decisions, and the selection and arrangement of cases relating to a particular branch of the law. The copyright protects only the original work of the reporter. * * * [He] has no monopoly of the opinions, decisions, and syllabi prepared by the courts and judges. * * * These opinions, decisions, and syllabi are free alike to all digesters. But when notes suitable for use in a digest have been prepared from these common sources of information, and properly secured by copyrights, a subsequent compiler in the same field is not permitted to avail himself of this original work, and save time and labor for himself by copying from the property of others. * * * He may take original opinions, and prepare from them his own notes, 'but he cannot exclusively and evasively use those already collected and embodied by the skill and industry and expenditures of another.' "

The circuit court expressed the opinion that "in a work like a digest, which has general characteristics of a directory, an index, or a road book," "each paragraph is separate and distinct from another, and can be removed without in any way destroying the effect of the remaining paragraphs"; that, where pirated portions can be separated from portions not subject to criticism, injunction should go only against the infringing portions; that, where infringement exists, "there are always some indications which disclose the presence of the pirate." It found that the proof showed only 303 instances of piracy, and reached the conclusion that it would be establishing a "dangerous precedent to condemn the entire work, when less than one per cent. is proved to be piratical." The main criticism advanced upon this appeal is that the court erred in treating the case as if complainant had been unable or unwilling to prove more than 303 instances of piracy. It is apparent that the circuit court and the master (who was, of course, constrained to conform to the views of the court) have treated each separate "point" in a syllabus as the subject of a separate copyright, and have acted upon the principle that no alleged infringing paragraph could be shown to be pirated unless it showed upon its face, independently of all other proof, language unmistakably borrowed from a copyrighted paragraph. To such an extent has this segregation been carried that there are several instances where the master has reported that there was no infringement of one paragraph in the headnote of a particular case, although he has found infringement of the other paragraphs of the very same headnote; and the circuit court has so held. In other words, where it has been conclusively shown that a subsequent digester has made an unfair use of the syllabus of his predecessor, and has left the evidences of such use behind him, it is nevertheless held that, to the extent to which he has

not left such evidence behind him, the court will presume that he did not avail of such prior syllabus to save himself time or labor. It is thought, on the contrary, that in such a case, where unfair use of any part of a syllabus is proved, the burden would be upon the unfair user to show, if he can, that nevertheless there were parts of the same syllabus that he did not so use. As a result of this method of examination, there seems to have been no attempt made to deal with the question presented by the pleadings, namely, whether taking each copyrighted work as a whole, and considering the evidence as a whole, the preponderance of proof shows that, in preparing defendant's publication, its editors or any of them have substantially made an unfair use of such copyrighted work. In consequence it has been necessary for this court to make an entirely independent examination of the whole body of proof, instead of the ordinary inquiry upon exceptions to master's findings, where it is usually sufficient to see if there is any evidence to support such findings. Upon the fundamental issue there has been, as yet, no finding at all. This circumstance will account for the inordinate length of this opinion. It is necessary to decide this issue of fact, because it is not the law that a copyrighted syllabus can be infringed only by a reproduction of its original language. It is the unfair appropriation of the labor of the original compiler that constitutes the offense. Identity of language will often prove that the offense was committed, but it is not the sole proof; and, when the offense is proved, relief will be afforded, irrespective of any similarity of language. For example, if, in a case like this, defendant's editors should one and all testify that they made up their digest from complainant's syllabi, so as to save the time and trouble necessarily involved in an independent examination of each opinion, there can be no doubt that such digest would be held to infringe, although the work were so cleverly done that no identity of language could be found in a single paragraph. It is necessary, therefore, to see how far complainant has made out its contention that this was precisely what defendant's editors did. Before discussing the testimony, it may be useful to refer to a few authorities, and to set forth some general principles.

In Myers v. Callaghan, 5 Fed. 726, 20 Fed. 441, and Id., 128 U. S. 617, 9 Sup. Ct. 177, complainant was the owner of the Illinois Reports, prepared by one Freeman, the copyright covering only the headnotes, statements of facts, etc. Defendants published a series of reports containing the same opinions, and with headnotes, etc., which they claimed were original. The supreme court (page 660, 128 U. S., and page 189, 9 Sup. Ct.) quotes with approval from the opinion of Judge Drummond in the circuit court:

"The defendants Ewell and Denslow, who were employed by the other defendants to annotate these decisions or reports, both state, upon examination, that their work was independent of that of Mr. Freeman; but it appears from the evidence that all the volumes of Mr. Freeman were used in thus editing or annotating, and, although it may have been their intention to make an independent work, it is apparent, from a comparison of the Freeman volumes and those of the defendants, that the former were used throughout by the editors employed by the defendants. It is true that in each volume, perhaps in the majority of cases, there is the appearance of independent labor performed by

them, without regard to the volumes of Mr. Freeman; but yet in every volume it is also apparent that Mr. Freeman's volumes were used, in some instances words and sentences copied without change, in others, changed only in form; and the conclusion is irresistible that, for a large portion of the work performed in behalf of the defendants, the editors did not resort to original sources of information, but obtained that information from the volumes of Mr. Freeman. Undoubtedly, it was competent for an editor to take the opinion of the supreme court, and possibly from the volumes of Mr. Freeman, and make an independent work; but it is always attended with great risk for a person to sit down, and, with the copyrighted volume of law reports before him, undertake to make an independent report of a case. It is not difficult to do this, going to the original sources of information, to the decisions of the court, the briefs of counsel, the records on file in the clerk's office, without regard to the regular volumes of reports. Any one who has tried it can easily understand the difference between the headnotes of two persons, equally good lawyers, and equally critical in the examination of an opinion, where they are made up independent of each other; and, bearing in mind this fact, it seems to be beyond controversy that although in many, and perhaps most, instances, there is a very considerable difference between the headnotes of the defendants' volumes and those of the plaintiff, the latter have been freely used in the preparation of the former. * * * Upon comparing the parts of each of the volumes, those of the complainant and of the defendants, one with the other, I think there can be no doubt that in some respects, in each case, the Freeman volume has been used by the defendants in the headnotes, the statements of facts, and the arguments of counsel. That is, there are certain unmistakable indicia that in every volume prepared by the defendants they have not confined themselves solely to the original sources of information, namely, the opinions of the judges, the records, and the arguments of counsel."

And defendants' entire publications in that case were held to infringe.

In Lawrence v. Dana, 4 Cliff. 1, Fed. Cas. No. 8,136, the court says:

"To constitute an invasion of copyright, it is not necessary that the whole of a work should be copied, nor even a large portion of it, in form or substance. If so much is taken that * * * the labors of the original author are substantially to an injurious extent appropriated by another, that is sufficient. * * * In the case of a map, guidebook, or directory, or the like, where there are certain common objects of information which must, if described correctly, be described in the same words, a subsequent compiler is bound to do for himself that which was done by the first compiler. He is not entitled to take one word of the information published without independently working out the matter for himself, so as to arrive at the same result from the same common sources of information." "Copying is not confined to literal repetition, but includes also the various modes in which the matter of any publication may be adopted, imitated, or transferred, with more or less colorable alteration, to disguise the source from which the material is derived." "Circumstances altogether inconclusive, if separately considered, may by their number and joint operation, especially if corroborated by moral coincidences, be sufficient to constitute full and conclusive proof." "When a considerable number of passages are proved to have been copied by the copying of the blunders in them, other passages which are the same with the passages in the original book must be presumed, prima facie, to be likewise copied, though no blunders appear in them."

In Publishing Co. v. Keller, 30 Fed. 772, the complainant had prepared and copyrighted a directory of the names and addresses of those persons in New York City who were supposed to be people of fashion. It was contended that a directory published by defendant was an infringement, and application was made to the circuit court in the Southern district of New York for a preliminary injunction. The question was whether defendant, in compiling his

directory, had done so by his own original labor, or whether, in order to spare himself time and expense, he had copied the names and addresses in plaintiff's list.    It appeared that plaintiff's list contained 6,000 names and addresses of persons residing in New York City out of the 313,000 names which appear in the general city directory.    Defendant's directory contained 3,500 names and addresses of persons residing in said city, and of this number 2,800 appeared in plaintiff's list.    "The fact," says the court, "that 2,800 of the names and addresses in defendant's book originally appeared in the complainant's book would, standing alone, be quite inconclusive. But when it is shown that 39 errors in complainant's book, consisting of misprints, erroneous addresses, insertion of names of persons who never existed, etc., are reproduced in defendant's book. *    *    *    a strong presumptive case of piracy is made out.    *    *    * The case for the complainant is such as to call for a full and explicit vindication on the part of defendant." And on the strength of the presumption arising from the 39 errors, publication of the 2,800 names was enjoined, although as to 2,761 of them there was no evidence of piracy at all, aside from such presumption.

In Chicago Dollar Directory Co. v. Chicago Directory Co., 14 C. C. A. 213, 66 Fed. 977, the court of appeals of the Seventh circuit sustained an injunction against the publication of a business directory of 60,000 names, where 67 blunders in complainant's copyrighted directory had been copied.

The  evidence mainly relied upon in the case at bar is such as is afforded by a critical comparison of corresponding paragraphs from complainant's and defendant's syllabi with the original opinions which they profess to epitomize.  Now, if there be anything of which a court may be supposed to take judicial notice, it is of the fact that compendiums of the facts and law in any particular case may be availed of without quotation.  The briefs of counsel are a great aid in the preparation of an opinion.  The record can be examined, the salient facts stated, the law discussed, and conclusion expressed in much less time, and with far less labor, when there has been such a preliminary winnowing of the whole case. And in many instances, by reason of the effort to avoid the not impartial presentations of fact and law by either side, the opinion will disclose no verbal evidences of the use of either brief.  That a person who undertakes to prepare the syllabus of an opinion can do so with more facility and in less time, if he already has before him a syllabus prepared by some one else, is manifest.  If he also, for some reason, wishes to conceal the fact that he has used this other syllabus, it would seem not to be a very difficult task to alter its structure, to substitute synonyms, to revert from the paraphrase of the syllabus to the text of the opinion.  The measure of his success in so doing will depend upon the degree of care exercised, upon his facility in the use of language, and the extent of his vocabulary.  Therefore, the mere circumstance that the language of a later syllabus differs from that of an earlier one does not prove that the draftsman of the later one constructed his syllabus wholly from the opinion, without making use of the earlier one to lessen

his labor and expedite his work. If, therefore, the proposition above quoted from the opinion of the circuit court, viz. that "there are always some indications which disclose the presence of the pirate," be intended to refer, not to the whole work, but to individual cases, as the context would seem to imply, we are unable to assent to it. Unfair use may be made of another's copyrighted paragraph, and no trace left of such use in the resulting paragraph. We should therefore not feel constrained to the conclusion that infringement can be shown only where the two paragraphs disclose suggestive verbal identities.

The language of the law is largely technical. There are very many words, phrases, and expressions which naturally suggest themselves to the trained lawyer who speaks or writes that language. Moreover, a single sentence of extreme brevity will often be found to fully express the legal concept which may be spread forth over a whole page of some opinion; and the briefer the sentence, or the more familiar the concept, the greater the likelihood that independent editors will express themselves in like terms. The mere circumstance, therefore, that two syllabi of the same opinion are found to be expressed in identical language is not always sufficient proof that the one was borrowed from the other. If, however, we should find instance after instance, where the production is continuous, and in which identity of language is found, not only in mere technical phraseology, but in the use of common speech as well, not only when the "point" is a brief one, but when it covers many lines, such continuous identity would become suggestive.

Complainant's copyrighted Reporters were issued in weekly pamphlets, each containing several cases, and each pamphlet contained the work of several of its editors. When these pamphlets were distributed to defendant's editors, each pamphlet was digested by a single editor. Thus in the headnotes to the opinions in any one of complainant's pamphlets we would expect to find such variances of style as would be produced by the personal equations of the different contributors. In the headnotes to those same cases issued by defendant we would expect to find the uniformity of style to be looked for when all are the work of one writer. If, under such circumstances, repeated instances were found where the style of defendant's syllabi is identical with the style of complainant's, it would be more suggestive than if all the earlier syllabi were also the work of one man.

It is conceded that defendant placed in the hands of its editors the several pamphlet issues of complainant's reporters with no attempt to eliminate the copyrighted headnotes. It would have been easy to expunge them or cover them up, and that is what has been done in preparing the digests published since this suit was brought; but during the period in question defendant chose to take its risk, relying solely upon the good faith of its editors. Of course, it required from each of them a certain amount of work in return for his pay, and from the very outset it exposed each of them to a constant temptation which must have been hard to resist. When-

ever one of them was behindhand with his work, or sickness, or worry, or inconvenient surroundings temporarily dulled his intellect, it was to be expected that the assistance ready to his hand in the copyrighted headnote would present itself most alluringly. There were eight editors (not counting two who only digested 100 cases, and whose evidence was not taken), some permanently attached to defendant's staff, others employed temporarily. It would not be surprising to find that one or more of them yielded sometimes to this temptation, and it would certainly seem that defendant's officers should have contemplated that possibility, and provided against it. When a pamphlet was sent to one of the editors to digest, a record was necessarily made of it, so that the manager or editor in chief might know from whom headnotes were due. From these records it should be easy to ascertain who was the individual who prepared any particular paragraph. And if it should turn out that two or three out of the eight yielded to the temptation, and "conveyed" the complainant's work, so clumsily that the fact remains self-evident upon mere comparison, while the others scrupulously conformed to instructions, examination of these records would show which were the offenders and which not, and also just what part of the whole work was done by them, respectively. These records are not produced, and, of all the many hundred paragraphs complained of, we are informed as to the authorship of but 30.

Defendant insists that it had the right to put complainant's pamphlets in its editor's hands, since the opinions therein were not copyrighted. Undoubtedly it had, but if it failed to take precautions against improper use of them, and in consequence might be unable when challenged with a prima facie case of unfair use either to overcome the prima facie proof, or to segregate the work of the unfair users from that of the fair users, it would have its own officers to thank for that result. Ordinary intelligence would surely have contemplated the possibility of the very contingency which complainant asserts has happened.

In order not to expand this opinion unduly, much of the testimony relied on is set forth in "Appendix Notes." The first of these is note No. 1, which shows the result of an investigation of pamphlet No. 12 of complainant's Pacific Reporter, vol. 29, comprising pages 844 to 941 of that volume. This court has made an independent comparison of all the digest paragraphs therein, not only with complainant's syllabi, but also with the original opinions as now found in the bound volume of 29 Pac. Rep. This exhibit is persuasive, for the reason that it gives a continuous showing of all the work done, with this pamphlet before him, by the defendant's editor to whom it was assigned. There has been no selecting of the cases helpful to complainant's theory and suppression of the others. Reference to the appendix will show some cases where the language is verbatim, some where slight changes are made, some where the language is dissimilar, and some where errors and oversights of complainant's editor are reproduced in defendant's paragraphs.

It seems unnecessary to further summarize this note. Reference may be had particularly to items 2, 4, 7, 13, 18, 19, 35, 43, and 44. Of this exhibit the master says:

"No fair-minded person can compare the headnotes in pamphlet No. 12, vol. 29, Pacific Reporter (and there are other like cases), with the digest paragraphs made by defendant's editor from the opinions in this number, and published in the General Digest, and doubt for a moment piracy, and particularly when the digester had before him headnotes already prepared, even when his testimony goes to show that no use has been made of the headnotes."

It is true that only a fraction of the 44 cases in the exhibit bear on their face conclusive evidence of piracy, such as the copying of complainant's errors; but none the less it is impossible to escape the conviction that the digester of pamphlet No. 12 has systematically made an unfair use of the headnotes he found therein, unless we are prepared to assume that, through some mysterious and unconscious process of selection, he was so unfortunate as to turn for help to complainant's syllabi only in those cases where existing errors made the use of such syllabi peculiarly dangerous. The record does not show which of defendant's editors digested this pamphlet, but had he appeared and testified that in doing his work he made no use whatever of complainant's syllabi the natural conclusion, in the face of the internal evidence, would be that historical accuracy is not his strong point, and whatever farther testimony he might give as to the methods he used when digesting from complainant's pamphlets would necessarily be received with caution.

The next important exhibit (B) is also a triple-column presentation of cases from three pamphlet numbers of the Northeastern Reporter. Its suggestive features are set forth in note No. 2. It covers 169 cases, exclusive of one in which the syllabus is by the court. The experience derived from an exhaustive examination of these two exhibits, embracing together 213 cases, shows the accuracy of the estimate of complainant's editor that to prepare similar exhibits covering the 13,000 or 14,000 cases digested from complainant's Reporters would be a work requiring years of continuous labor. Exhibit B presents all the cases in the three pamphlets, thus giving the opportunity to observe the results of continuous work by one, two, or three digesters. The result is to confirm the conclusions drawn from Exhibit A. There is nothing in the record to show which of defendant's editors digested any one of the syllabi included in these three pamphlets.

The next exhibit, in 2 volumes (C and CC), presents in parallel columns the syllabi of complainant and digest notes of defendant to all the cases in volume 19 of the Southwestern Reporter, about 700 in number. It has been absolutely impossible to make an exhaustive examination of this exhibit. The witness under whose supervision it was prepared testified to the conclusions he drew from it. His statement is the evidence which defendant moved to expunge, and, of course, it is only secondary. We have, however, been able to look into the exhibit sufficiently to reach a conclusion, examining the parallel syllabi with the original opinions in the bound volumes. Several groups of five or ten consecutive cases have been thus ex-

amined. In other parts of the exhibit other groups, consisting of every fifth or every tenth case, have been scrutinized, and again a number of cases which the witness said contained common errors have been carefully studied. Some of these last will be found in Appendix Note No. 3, among them two of the most glaring instances of copying errors (vide items 7 and 10). And there is a large number of cases in which complainant's points are reproduced verbatim, or with trivial changes, where examination of the opinion shows that the peculiar phraseology is not found therein, but was the original work of complainant's editor. We cannot escape the conclusion that some, at least, of defendant's editors who digested the pamphlets comprising this volume, repeatedly, if not habitually, made an unfair use of the copyrighted work of the complainant.

The next important exhibit is the so-called "Supplemental Brief," which contains the 548 paragraphs submitted to the master and several hundred additional ones. It includes some of the cases already covered by the other three exhibits, but in it are also found many hundred new ones. It would unnecessarily expand this opinion to undertake to enumerate the most characteristic of these contrasted paragraphs, even in a footnote. It will be remembered that the master found 303 of the 548 paragraphs to contain internal evidence of piracy, and to his finding defendant has not excepted. This exhibit has been carefully studied, with constant reference to the original opinions, and such examination was made in advance of any reference to the schedule annexed to the master's report, in which he indicated in what paragraphs he found evidence of piracy. The results of such examination were noted and subsequently compared with the master's schedule. Such comparison showed that his work had been most careful and conservative. The 303 paragraphs condemned by him are distributed between 242 cases, and it was found that of these 242 cases all but a score or so had been independently marked by the court as indicating piracy on their face; and that 34 cases, in which he (the master) had given defendant the benefit of the doubt, had been marked by the court as piratical. Of the additional cases not presented to the master, but included in the supplemental brief, 126 were found to show internal evidence of piracy.

The first three exhibits dealt with comparatively few of complainant's copyrighted pamphlets. This last exhibit, however, broadens the field of investigation, and shows most clearly how widespread was the unfair use made of complainant's work. There are cases where internal evidence indicates such unfair use of syllabi in volumes 28, 29, and 30 of the Pacific Reporter, in volumes 23 and 24 of the Atlantic Reporter, in volumes 29, 30, and 31 of the Northeastern Reporter, in volumes 14 and 15 of the Southeastern Reporter, in volumes 10 and 11 of the Southern Reporter, in volumes 18, 19, and 20 of the Southwestern Reporter, and in volumes 49, 50, 51, and 52 of the Northwestern Reporter. In volume 24, Atlantic Reporter, instances of piracy are found in 10 out of the 16 pamphlets comprising it, and 7 such instances in a single pamphlet; in volume 30, Pacific Reporter, like instances are found in 4 out of 9 pamphlets; in volume 29, Northeastern Reporter, in half of the pamphlets; in volume 30, of the same

series, in 11 out of 12 pamphlets, 8 instances being found in a single pamphlet; in volume 31, of the same series, in 7 out of 10 pamphlets. In a single pamphlet of volume 52, Northwestern Reporter, there are 7 instances. In volume 19, Southwestern Reporter, instances of piracy are found in 11 out of 13 pamphlets, and in one single pamphlet, of less than 100 pages, 14 such instances are found.

Complainant supplemented all this proof by testimony of an entirely different character. It appeared that defendant's syllabi were produced at a rate of speed which, it is contended, indicated that they were not prepared direct from the opinions, but with the aid of some earlier syllabus. Two of the defendant's editors, who were temporarily employed, testified that they averaged 8 to 10 cases a day; but the more experienced men, who were regularly employed, reached a much higher rate of speed. One testified that he averaged 20 to 30 cases a day; another that he had digested 30 to 40 cases per day of eight hours; and a third (who did most of the work) that he could (and did) digest over 24 patent cases, or 35 ordinary cases, making 75 to 100 digest paragraphs in a single day. Eight of complainant's editors testified to a rate of speed ranging from 4 to 7 cases a day; the two most experienced of them, engaged in similar work for 10 and 23 years, respectively, testify that the best they could do was 6 or 7 cases a day. Finally Mr. Sickles, for many years reporter of the New York court of appeals, an entirely independent witness, of 21 years' experience in such work, testified that he had not "been able to go over more than 7 cases in one day"; that his average was about 4; but that, if a man had a case with a headnote, and simply changed the form of the headnote, he did not know why he might not pass 20 or 30 cases a day. At the hearing before the master an offer was made on behalf of defendant that two, three, or four of its editors should, in the presence of the master, digest such number of cases of average length and style as he should select, under such conditions as would insure the fact that the opinions had not then been seen by the digester, and with the headnotes obliterated. This was objected to by complainant's counsel, and was not permitted. Whether or not such a test should be made was a matter largely within the discretion of the circuit court; certainly it was not error to exclude it. It contemplated only a few hours' work, to be done under circumstances most conducive to rapidity, it being fully realized by the experimenter that failure to come up to the measure he had set for himself in his oral testimony would probably lead the court to the conclusion that such testimony was untruthful. The rate of speed attained under such a strong stimulus would not fairly represent the rate at which he worked day in and day out, for weeks and months continuously, under no supervision, and under varying conditions, mental and physical. The principal editor of defendant further testified that since the headnotes have been covered up he has not discovered any change in the quantity of cases digested by defendant's editors in any given time, and that he himself now digests more cases a day than he used to, having latterly employed a stenographer. On the whole, we are not inclined to give as much weight to this argument from "rate of speed" as we thought at first it was entitled to. To

make it of any particular value, the character of the digest paragraphs would have to be carefully investigated,—a most laborious process. It is, of course, easy to conceive a man of experience in such work dictating "digest points" to 50 cases in a day; but, when written out, they might not be very useful finger posts to the propositions of law discussed and laid down in the opinion. Irrespective, however, of this proof as to rate of speed, it is apparent from the evidence already discussed that it indicated a general, systematic, and widespread unfair use of complainant's copyrighted work by defendant's editors, or some of them, coupled with an effort to disguise such use. A prima facie case was made out, which defendant was called upon to meet.

Defendant's reply to the case thus made was a denial by all its editors that they had made any use at all of complainant's syllabi in the preparation of their digest points. One or two of them admit that, after their own work was done, they may, from curiosity, have looked at complainant's syllabi; but the whole eight of them positively assert, each for himself, that he obeyed his instructions, and "has in no case used any of the syllabi, headnotes, or digest paragraphs published by plaintiff, * * * but has in each and every instance prepared and composed all paragraphs and propositions directly from the opinion which he digested." As indicated above, there are so many paragraphs in defendant's publication where the internal evidence of piracy is convincing that a mere general denial by the writer of them that he made any use of the copyrighted syllabi would have no weight. It is, of course, conceivable that some of defendant's editors carefully followed their instructions to work independently of syllabi or footnotes, while others did not. Therefore, if the authorship of the manifestly offending paragraphs were shown, the statements of those who wrote the other paragraphs might be sufficient to rebut any presumption arising from mere verbal identities in their work. The record shows quite clearly that the defendant could have shown what work each of its editors did, had it chosen to do so. In the early stages of the case, when motion was made for preliminary injunction, the editor in chief was able to make an affidavit stating the precise number of cases digested by each one of three of the editors whose answering affidavits were temporarily delayed. Another editor swears that he "digested 563 cases * * * of which 434 were digested from advance sheets of [complainant's] Reporters." Another one had no apparent difficulty in picking out from the schedule in evidence cases digested by him, nor in indicating some of the pamphlets from which he digested. At the close of the testimony complainant's counsel asked defendant's counsel to furnish a list showing by whom each one of the pamphlet numbers of the complainant's Reporters referred to in the bill of complaint was digested. To this defendant's counsel objected that it would "involve a very large amount of labor," and no such list, either complete or partial, has ever been presented. As was indicated above, if this failure to discriminate should leave the denial of unfair use by each separate witness handicapped by the manifestly piratical paragraphs, which, for aught that appears, are his own production, defendant cannot com-

plain, since it has failed to disclose which of its editors it was who left such convincing evidence of piracy apparent on the face of his work.

It becomes necessary next to examine the testimony, in order to see what discrimination, if any, can be made on the proof as it stands between the evidence of the different editors, in order to ascertain what weight should be given to their respective denials. It will be remembered that defendant's digest covers 19,000 cases. The circuit court found that about 28 per cent. were digested from sources other than complainant's reporters. Although we are not satisfied that so high a percentage is warranted by the proof, we may accept it for the purposes of this appeal. That would leave 70 per cent. of the whole number or 13,300 cases digested from complainant's copyrighted pamphlets. Defendant's principal editor, Herrick, testified that he digested 10,000 cases in all. This would include 7,000 cases from complainant's pamphlets; and, indeed, the witness testified that the proportion of his work which consisted in digesting cases from the Reporter was 70 to 75 per cent. He examined the list of alleged infringing paragraphs submitted to the master, and testified that it contained only seven which he had prepared, and he pointed them out. The schedule annexed to the master's report shows that as to six of these the master found that there was no internal evidence of piracy, and the independent examination by this court gave the same result. As to the seventh (30 Pac. 20) the master found infringement, and the court's examination confirmed his finding, but the sole internal evidence of piracy is identity of verbiage. Such evidence would be very persuasive were the paragraph one of many, all of which show verbatim reproductions of complainant's syllabi; but when the paragraph is considered by itself, or rather with the other six, as it must be when testing Mr. Herrick's testimony, mere verbal identity in a single instance, without the reproduction of any errors, must be wholly overborne by the positive testimony of the writer that his work was original. Among the additional cases on the supplemental brief there is found another case, digested by the same editor (51 N. W. 363), but, although it displays suggestive verbal identities, it contains no errors. Upon the proof, then, as it now stands, there seems no reason why the evidence of Mr. Herrick should be discredited. As to the 7,000 cases, therefore, which he digested from the copyrighted pamphlets, complainant's prima facie case is sufficiently rebutted.

As to the other seven editors, however, the situation is different. The first of them to give evidence testified that he presumed he digested somewhere near 1,000 cases from complainant's Reporters; that he only found 3 cases digested by him in complainant's list of alleged infringing paragraphs, and he identifies those 3. But it appears that he only examined "somewhere in the neighborhood of 200" of the paragraphs on the list before the master. For aught that appears, the most convincing instances of piracy found among the remaining 348 paragraphs may have been his work. The next witness could not tell how many cases he digested, but the principal editor (Herrick) testified that one-quarter of the whole was

done by him. He said that he had looked over a portion only of complainant's list of alleged infringements, and "found some to be work which he did"; but he does not indicate which they are. Other evidence shows that to this editor are attributable items 4 and 7 in note No. 3, infra. The third editor to testify said that he digested "less than 1,000 cases" in all, which would include about 700 cases from the copyrighted pamphlets, and that he found that 21 paragraphs on the list of alleged infringements were his work; but he does not identify those 21 paragraphs, nor is there any evidence to show which they are. The next testified that he digested 563 cases, of which 434 were digested from advance sheets of complainant's publications. He did not examine the list of alleged infringements, and, of course, does not say whether or not it includes any of his work. Other evidence indicates that item 5 in note No. 3 is to be credited to him. The next witness (Farnham) digested less than 400 cases, and, when asked if any of his paragraphs were on the list of alleged infringements replied, "None that I know of." While t* is is not very positive testimony, we may give it the benefit of the doubt, and group his 400 cases with Herrick's 7,000; but there is nothing to identify them. The next witness testified that he had digested 998 cases, and found only 5 paragraphs which he had prepared on complainant's list; but there is no evidence to identify those 5 paragraphs. The seventh associate editor testified that he digested from 600 to 800 cases; all, so far as he remembers, from complainant's pamphlets. He had not seen the list, and did not undertake to say whether or not it contained any of his work. Other evidence attributes to him five instances where the master and the court both find piracy, and among them are items 8, 9, and 10 in note No. 3.

As indicated above, the mere general denial of any use of complainant's syllabi, where the deniers are themselves the authors of paragraphs which are manifestly piratical, is not sufficiently persuasive to rebut the prima facie case made out by the complainant. The situation of the case, then, is as follows: Nearly 6,000 cases published in complainant's pamphlets, with syllabi and footnotes protected by copyright, were digested by persons in the employ of defendant, who repeatedly and systematically made an unfair use of the copyrighted work, in order to save themselves the time and labor of original investigation. These unfair users endeavored, so far as practicable, to conceal the fact that such unfair use had been made; sometimes successfully, sometimes not; and in consequence it is not practicable now to determine, without evidence which they do not offer, in which cases an unfair use had been successfully concealed and in which no unfair use was in fact made. In such a condition of affairs, where by the misconduct of defendant's employés a part of complainant's copyrighted work has been appropriated by defendant, and so mingled with original matter contained in its publication that no one except its own employés who did the wrong can segregate the pirated from the original matter, and they do not make such segregation, the whole work, or so much of it as is tainted by the workmanship of the unfair users, should be en-

joined and accounted for.   In the case at bar, therefore, the decree of the circuit court is reversed, with costs, and the case remitted to the circuit court, with instructions to decree in favor of the complainant for an injunction against defendant's Digest for 1892, except so much thereof as contains paragraphs digested from the advance sheets of the United States supreme court, and from the English, Canadian, and other reports referred to in the first part of this opinion, and paragraphs taken from syllabi prepared by the court,—with the privilege, however, to defendant, if it be so advised, to show by competent proof to the court or master which paragraphs in said digest were prepared by its editors Herrick and Farnham; with the further privilege of moving on such proof to except such paragraphs from the operation of the injunction.   But, if defendant should avail of this privilege, the case shall then be reopened sufficiently to allow complainant, if it be so advised, to adduce additional proofs tending to show any unfair use of complainant's copyrighted work by said two editors, or either of them. The circuit court is further instructed to decree in favor of complainant for a further accounting in accordance with the conclusions hereinbefore expressed.

## APPENDIX NOTES.

### NOTE NO. 1.

Triple-column Exhibit A, put in evidence by complainant, contains the syllabi from each case contained in pamphlet 12 of volume 29, Pacific Reporter, covering pages 849-911, except four cases where the syllabi were prepared by the court. Arranged in parallel columns are the corresponding paragraphs from defendant's digest. A third column contains syllabi of the same cases so far as they had been published in the official reports at the time the exhibit was put in evidence. The official reporter presumably worked from the original opinions, records, briefs, etc., without seeing complainant's books or pamphlets. The differences between complainant's syllabi and those in the official reports are most striking. A comparison of complainant's points with those in defendant's publication gives the following results, every case (except the four where syllabi are by the court) being separately considered.

1.  Rimmer v. Blasingame, 29 Pac. 857, presents no indication of borrowing · from complainant's syllabus.

2.  Yost v. Commercial Bank of Santa Ana, 29 Pac. 858.

Complainant's syllabus states that the court held that a certain certificate to a chattel mortgage was sufficiently signed, "W. K. J., Secretary," where the body of the certificate recited that it [the mortgage] was made to "*W. K. J., secretary of * * * the mortgagee in said mortgage named.*" The opinion nowhere suggests that the certificate recites that the mortgage was made to "W. K. J., secretary." It was in fact made *to the bank.* The same syllabus begins a second point with the statement, "Where a note and mortgage are pleaded and set out in one *paragraph* of the answer," etc. Reference to the opinion shows that "paragraph" is a mistake for "defense."

Both of these mistakes appear in defendant's syllabus.

3.  California Southern Hotel v. Callender, 29 Pac. 859.

Action to recover balance due on a subscription to stock. Query whether it was necessary, in order to prove ownership of shares, to show that a stock certificate had been issued. The court held not, for the reason, as stated in the

opinion, that "the company was not bound to issue certificate until" subscription is fully paid. Complainant states this, in an original and somewhat awkwardly expressed phrase, thus: "it [the certificate] *not being due* until," etc.

Defendant's point uses this same form of expression: "as it [the certificate] *is not due* until," etc.

4. Wilson v. California Central R. Co., 29 Pac. 861.

The court held that a failure of a common carrier to deliver the goods carried on demand, *even after the transit has ceased* and the goods have been stored at place of consignment, is a breach of the carrier's original contract. Complainant's syllabus wholly omitted the statement that the transit had ceased.

Defendant's point, which is a *verbatim* reproduction of complainant's, omits the same statement.

The opinion elsewhere discussed the "negligence or fault" of the carrier, using that phrase repeatedly with the words in the sequence given. In complainant's point covering that part of the opinion the same phrase, "negligence or fault," is used.

In defendant's corresponding point, which contains the substance of complainant's point, with its structure inverted, the phrase used is "fault or negligence." There is no apparent reason why a digester direct from the opinion should thus transpose the words found therein, but, if it were sought to change the language of the point, just such a transposition would be natural.

5. First Nat. Bank of San Diego v. Falkenhan, 29 Pac. 866.

Complainant's second point is found verbatim in defendant's digest. It begins with the words, "The expression 'waiver of protest,' when applied," etc. It would have been equally natural to begin, "The phrase 'waiver of protest,' " etc., or "the words 'waiver,' " etc., or "A waiver to protest, when applied." That defendant's editor in this particular instance happens to use the same phrase as complainant does not, of course, prove that he followed the original syllabus, nor does the fact that the rest of the point is verbatim, for the words found in it are the ordinary stock terms of the law of negotiable paper. But, if like identity of language is found occurring repeatedly, it becomes a circumstance proper to be considered in determining the question at issue, and the more frequent the identities the greater the weight to be given to this circumstance. When two men undertake to digest each a hundred opinions, we should not be surprised to find that in one or two or three instances they had each epitomized an opinion in a half dozen lines identical in verbiage. But, if we found twenty or thirty or forty such instances, we should be likely to think it somewhat singular, and, if we found sixty or seventy such instances, would probably incline to the opinion that something else besides chance had been at work.

6. Fritts v. Camp, 29 Pac. 867.

The prominent point in this case, with the discussion of which the opinion begins, and which occupies nearly three-fourths of the opinion, is whether the suit (to enjoin defendants from dumping mining débris, etc.) was really an action to quiet title to real estate. Having held that it was, the court, in a dozen lines, refers to the state constitution, which requires all such actions to be brought in the county where the land was situated, and concludes with a direction for dismissal, as the court has no jurisdiction.

Complainant's point gives the provision of the state constitution. So does defendant's, but neither of them have a word to say about the real point in the case. It is, of course, possible that both editors committed the same oversight; but certainly it is highly improbable, where the oversight was failure to appreciate what three-fourths of the opinion was concerned with.

7. Mastick v. Superior Court, 29 Pac. 869.

Except for the omission of a statement of the reason of the decision, defendant's first point is almost a verbatim copy of complainant's, the main clauses being transposed. The question in the case was as to the right of the guardian of

a lunatic to recover a will of his ward from the possession of a person to whom she had delivered it. The opinion reads, "Some time after such delivery, Mrs. L. became incompetent." The time when she was *declared* insane was not at all material, and the court does not refer to it; but complainant, in its point, instead of using the accurate phrase, "before she became incompetent," uses the inexact one, "before she was *declared insane*."

And defendant's point contains the *same* inexact phrase, "before she was declared insane."

7½. **Widber v. Superior Court of San Joaquin, 29 Pac. 870.**

The first point (except for omission of language of a statute) and the second point in both works are verbatim copies, but the second point is also a verbatim copy from the opinion.

8. **Murray v. Colgan, 29 Pac. 871.**

Whatever similarity there may be is not sufficiently suggestive to be considered.

9. **Los Angeles P. & G. R. Co. v. Rumpp, 29 Pac. 872.**

The opinion states that the judge below found that a certain fence would cost $100. Both complainant's and defendant's points state this as a finding "that it would cost only $100." Inasmuch as the evidence showed clearly that it would cost more than $100, it is not surprising that both editors should have inserted the word "only"; but both of them wholly omit another point raised and decided in the opinion.

10. **Cowden v. Pacific Coast S. S. Co., 29 Pac. 873.**

Defendant's point (of four lines) is a verbatim copy of complainant's.

11. **San Bernardino Ry. Co. v. Haven, 29 Pac. 875.**

Complainant's second point reads: "Where the land through which a right of way is sought to be taken is adapted to cultivation, the *increased cost of cultivating* it caused by building the road may be considered in assessing damages." Defendant's reads: "The *increased cost of cultivating* land through which a right of way is sought to be taken which is adapted to cultivation, caused by building the road, may be considered in assessing damages." It is difficult to see how any one digesting unhampered from the opinion could have produced a statement so involved and awkward as this. It is apparently a rearrangement of the words of complainant's point in a different sequence. And, strange to say, both editors are again inexact. The "increased cost" was not of *cultivating* but of *irrigating* uncultivated land so as to bring it under cultivation.

12. **McCreery v. Wells, 29 Pac. 877.**

The first eight lines of complainant's first point are found verbatim in defendant's.

13. **Long v. Citizens' Bank, 29 Pac. 878.**

Nearly all of complainant's first point is found verbatim in defendant's. It appears from the opinion that action was brought on a certificate of deposit issued before incorporation, and signed, as cashier, by the person who afterwards became cashier. The defendants were such cashier and the *promoters* of the bank. The court held that neither the bank nor the promoters were liable, but only the person who signed as cashier. It does not appear from the opinion that any of the defendants except the cashier were *officers* of the bank. The complainant's second point, however, states that it was held that "the promoters and *subsequent officers*," other than the cashier, were not liable; and defendant's second point makes the same statement, using the same phrase, "the promoters and subsequent officers."

14. Ellis v. Porter, 29 Pac. 879.

Except for the omission of its last four lines, complainant's point is found almost verbatim in defendant's digest.

15. Taylor v. Buford, 29 Pac. 880.

·Complainant's first point is found verbatim (save for the omission of two unessential words) in defendant's. Defendant's second point is verbatim from the opinion.

16. Godbe Pitts Drug Co. v. Allen, 29 Pac. 881.

Complainant's first point is reproduced verbatim.

17. Bonnie v. Earll, 29 Pac. 882.

A point containing nine lines is reproduced verbatim by defendant, the same words (save in the substitution of "such testimony" for "it") in precisely the same sequence. Moreover, the court, in referring to certain testimony, uses the expression, there is "no evidence that" the witness was actuated by ill will. This is paraphrased in both complainant's and defendant's point: there is "*nothing to show* that."

18. Hershfield v. Rocky Mountain Bell Tel. Co., 29 Pac. 883.

Complainant's first point is reproduced verbatim in defendant's first point. The opinion quotes from a city charter as follows: "City council shall have power to license, tax, and regulate * * * .street railways, * * * telephone companies, gas companies, and all *other branches* of business," etc. Complainant's first point begins: "The grant in a city charter authorizing the council 'to license, tax, and regulate' telephone companies 'and all *their branches* of business," etc. Defendant reproduces the error.

19. McBee v. McBee, 29 Pac. 887.

A suit for divorce on the ground of habitual drunkenness. Defendant's point is much shorter than complainant's, but contains some expressions characteristic of complainant's and not found in the opinion. The court, epitomizing the evidence, says that defendant "*only* drank when he happened to come to town, * * * and *then not always to excess.*" Complainant paraphrases thus, "his drinking was *mostly* when he went to town, * * * and *then rarely to excess,*" and this clause defendant reproduces verbatim.

20. Rader v. Barr, 29 Pac. 889.

Complainant's point reads: "An appeal will not lie from a judgment entered in a justice's court against defendant by consent." Defendant's reads: "An appeal will not lie from a judgment entered by consent against defendant in a justice's court." Both contain unnecessary words; a perusal of the opinion shows that the circumstance that judgment was *in a justice's court* was wholly immaterial.

21. Sears v. Martin, 29 Pac. 890.

The similarities are not especially suggestive.

22. House v. Fowle, 29 Pac. 890.

Complainant's first two points are reproduced verbatim by defendant. The same is true of the third, except that "deceased husband" appears instead of "decedent." The opinion and statement of facts (which is by the court) set forth that the widow "did not give any intimation that she intended" to claim dower; and again, "at no time gave any intimation that," etc. This is paraphrased in both complainant's and defendant's third point, "did not intimate her intention."

23. Johnston v. Letson, 29 Pac. 893.

Except for a statement of the provisions of a statute, defendant's point reproduces complainant's point verbatim.

24. Youree v. Territory, 29 Pac. 894.

There is great similarity between the first points of both parties. In the second point both editors have inserted an unnecessary word not found in the opinion. Inasmuch as one object of both is to make their points as brief as possible, this circumstance is suggestive. The language of the opinion is: "He [defendant] said he was arrested down there for robbing the government, and said i cost a good deal of money to get out of it." Both editors paraphrase the latter part of the sentence thus: "it cost *him* a good deal of money to get out of it."

25. Board of Commissioners v. Burns, 29 Pac. 895.

The opinion is a very long one, and there is no especially suggestive similarity between the points.

26. Bohm's Estate v. Hoffer, 29 Pac. 905.

This opinion is very short, and there is no suggestive similarity between the points.

27. Wyatt v. Larimer & W. Irr. Co., 29 Pac. 906.

Defendant's points are manifestly taken direct from the opinion.

28. Colorado Soap Co. v. Burns, 29 Pac. 915.

There is more difference than usual in the language used.

29. Jessup v. Whitehead, 29 Pac. 916.

The resemblances are not especially suggestive.

30. Goard v. Gunn, 29 Pac. 918.

The resemblances are not especially suggestive.

31. Bush v. Koll, 29 Pac. 919.

The opinion is 10 columns long. The two editors produced each but a single point, less than 10 lines long, identical in concept and structure, and nearly verbatim.

32. Smith v. People, 29 Pac. 924.

The opinion quotes a provision of statute that actions to determine interests in land "shall be tried in the county in which the *subject of the action* or some part thereof, is situated." Both editors give this "shall be tried in the county in which *the land* or some part thereof, is situated."

33. Wagner v. Law, 29 Pac. 927.

Motion to modify a judgment was denied, as the court says, "on the ground that the question upon which this court affirmed the decision of the superior court was raised for the first time in this court and was not suggested, raised, or argued in the superior court." Both editors paraphrase this, in identical language, thus: "On the ground that the *ruling* question was not raised in the court below."

34. Brown v. Winehill, 29 Pac. 927.

The question was as to propriety of allowing an item paid for stenographer's minutes, as part of the costs of appeal. Both editors use the expression, "on *reversal* of the judgment on appeal." A perusal of the opinion shows that the circumstance that judgment was *reversed* was immaterial.

35. Fransioli v. Bruc, 29 Pac. 928.

Complainant's first point, except its first two lines, is reproduced verbatim; so is greater part of the second point. Referring to the admissibility of a certain written instrument, the opinion says: "There might have been such

conditions surrounding the making of the contract * * * as would have justified the admission of such writing in evidence, *even although, when construed alone*, it could only be interpreted as contended for by the appellant.". In paraphrasing this, both editors use the same expression, *"even if, looking at the instrument alone,"* it would, etc.

36. Tustin v. McFarland, 29 Pac. 929.

The resemblances are not especially suggestive.

37. Lacy v. North Olympia Land Co., 29 Pac. 929.

The resemblances are not especially suggestive.

38. Scoland v. Scoland, 29 Pac. 930.

The opinion says, "Motion for a nonsuit was made *at* the close of plaintiff's testimony." In his fourth point, complainant's editor states that the motion to dismiss was made *"after* the close of plaintiff's testimony." A change of no particular importance, but defendant's fourth point, which reproduces complainant's verbatim, shows the same change

39. White v. Johnson, 29 Pac. 932.

There are no suggestive resemblances in this case. Defendant's points seem to be taken direct from the opinion.

40. Demattos v. New Whatcom, 29 Pac. 933.

There is nothing in defendant's points to indicate any resort to complainant's.

41. Tacoma Lumber Co. v. Wolff, 29 Pac. 936.

Defendant's point is an inversion of complainant's, the same words being used.

42. Chapin v. Bokee, 29 Pac. 936.

Defendant's points seem to be taken direct from the opinion.

43. Stimson Mill Co. v. Board of Harbor, 29 Pac. 938.

Here again both editors, although it is their object to condense, have lugged in an unnecessary word; and that, too, in a sentence which purports to give the provision of a clause of the state constitution. The opinion shows that the question was "as to the jurisdiction of the board to establish harbor lines in navigable waters *in front* of a town, as distinguished from a city" under article 15 of the constitution. No other phrase than "navigable waters in front of" is used in the opinion. But complainant's point states that the constitution provides for "commissioners to establish harbor lines in navigable waters *lying in front* of cities." And defendant uses the same phrase, verbatim.

44. State v. Womack, 29 Pac. 939.

Complainant's first point reads: "An indictment for conspiring to bribe a member of the board of education charged that defendant did 'then and there conspire together to tempt, seduce, bribe, and corrupt said' member, 'by then and there offering to pay' him $5,000, 'all of which' defendants 'did and performed to unlawfully and corruptly induce, influence, and bribe said' member. *Held*, that * * * the indictment charged the commission of a crime." The indictment, as set forth in the opinion, used the name of the person bribed wherever the words "said member" or "him" are used in the above point.

Defendant's point reads:

"An indictment for an attempt to bribe an executive officer charging that the defendants did 'then and there conspire together to tempt, seduce, bribe and corrupt' said member 'by then and there offering to pay' him $5,000, 'all of which defendants did and performed to unlawfully and corruptly induce,

influence, and bribe said' member,—sufficiently charges that the money was offered."

Neither the word "officer" nor the word "member" is used in the indictment.

The above seems to sustain complainant's contention as to this point, namely, that defendant's editor, undertaking to paraphrase complainant's point, found, by reference to the bribery statute, which is quoted in the opinion, a designation convenient to use in such paraphrase, viz. "executive officer"; that either because his work was interrupted, or from some other cause, he neglected to stick to this new designation, and has incautiously returned to the complainant's word "member." Thus, the very effort to conceal a resort to complainant's point has made that fact more manifest. It would certainly seem that a person who consulted the opinion alone would have been consistent, and used the same designation throughout the point.

## NOTE NO. 2.

The second so-called Triple Column Exhibit B includes all the cases consecutively reported in volume 31 of the Northeastern Reporter, published by the plaintiffs, from page 385 to page 655. It covers Nos. 5, 6, and 7 of the pamphlets in which this Reporter is first issued, and which were used by defendant's editors. Whether the work on all these cases was done by a single one of defendant's editors or not is uncertain. Every one of the cases in this exhibit (except five or six in which the headnote is by the court) have been examined, and the "points" published in defendant's digest compared with the opinion and headnotes first published in the Northeastern Reporter, the book used being the bound volume in the law library. It would unnecessarily expand this note to refer to every such case. Generally speaking, there is about the same proportion of cases where complainant's points are reproduced verbatim in defendant's digest, and about the same proportion of changes in structure of the sentences. Those cases which show something more than mere identity of language are hereinafter noted.

### 1.  McCarthy v. Foster, 31 N. E. 385.

Action against lessor by lessee's employé for injuries caused by the fall of an elevator. Defense, contributory negligence. The complainant's point states that notices had been posted prohibiting all persons "from passing up and down *in* the elevator"; also, that plaintiff "*entered* and started it." In both particulars defendant's point conforms closely. The opinion, however, shows that it was not the cage or box elevator into which one *enters*, but a mere moving platform. The notices forbade passing up or down *upon* it, and the court, in an opinion one column long, uses the phrase "*upon* the elevator" ten times. Neither complainant's nor defendant's points refer at all to the equally important point also made in the opinion, that it made no difference, *as against the lessor*, that, owing to the piling of merchandise in the shaft, plaintiff, whose duty it was to start it, could not start it except by going upon it to handle certain ropes.

### 2.  In re Smith, 31 N. E. 387.

Complainant's point contains 24 lines. It indicates that the point decided was that certain stocks and securities, held in trust for a married woman under the will of her father,—such married woman being dead, leaving no issue nor father nor mother, nor nephews nor nieces,—would go to her sole surviving brother, except $5,000 to her husband, under a statute cited. Defendant's point resembles complainant's very closely, although it is shorter, words and phrases being eliminated. It states the point as does complainant's.

The opinion is quite short,—only one column,—and it states the real point at issue so plainly that it is difficult to see how any one could mistake it. The married woman, daughter of the first decedent, had made a will leaving all her property to her husband; and the court held that she had no power of disposition by her own will over the personal property into which, in conformity with the provisions of his will, the original testator's real estate had been converted. Neither complainant's nor defendant's point gives the slightest in-

timation that the daughter had herself made a will, nor what was the real question decided.

3. 'Traders' Ins. Co. v. Race, 31 N. E. 392.

Complainant's point reads: "A court of equity will not hold a policy void because the premises have become vacant, contrary to a condition in the policy, when the evidence wholly fails to show that *the building would not have been burned precisely as it was if it had been occupied.*" Except for the omission of the word "wholly," defendant reproduces this point verbatim. It is suggestive, that both editors should have used the precise form of expression italicized above when paraphrasing the opinion, which says that appellants must prove, not merely that the premises were vacant at the time, "but that such vacancy or unoccupancy *contributed in some degree* to the causing of that fire, or the prevention of its extinguishment."

4. Chicago & A. R. R. v. Fisher, 31 N. E. 406.

Complainant's point reads: "In an action against a railroad company for injuries to a passenger riding on the platform of a car, an instruction that the plaintiff as a passenger was not required to exercise extraordinary care, or *manifest the highest degree of prudence,* is not obnoxious to the objection that it relieves the plaintiff of the duty of exercising care *proportioned to his extra-hazardous position.*" Defendant's point is a verbatim reproduction, except that "proportioned" is changed to "proportional," and the words "to avoid injury," are inserted. The reporter gives a brief statement of facts, not by the court, which is covered by copyright, and which contains the text of the instruction. Evidently defendant's editor took *his* statement of the instruction from one or other of the copyrighted sources, for the opinion only paraphrases the instruction, and gives it thus: " * * he was not required by law to *exercise extraordinary* or the *highest degree of care;*" there is nothing in the opinion to suggest the words "manifest" or "prudence," which are found in the points of both sides. Moreover, complainant's editor was inexact in the other italicized passage, which defendant evidently copied, for the phrase the court used was, "care *proportioned to the apparent danger of the situation.*"

5. Wisconsin Central R. Co. v. Ross, 31 N. E. 412.

Where the opinion says it is not pretended the trustees were appointed by or "acting under *any order* of court," complainant's editor writes, "acting under the order of *any court*"; and defendant's editor does likewise.

6. Matson v. Alley, 31 N. E. 419.

Complainant's point reads: "A judgment note of a corporation, executed by its president and secretary, is valid as a note *where no attempt is made to confess judgment on it.*" Defendant's point is nearly verbatim, preserving the italicized clause. But such clause is entirely superfluous, for the opinion expressly says that it is unnecessary to consider that feature of the notes, namely, the power of attorney to confess judgment.

7. Chicago Attachment Co. v. Davis S. M. Co., 31 N. E. 438.

The opinion contains a quotation from the Illinois statute of frauds containing this clause, "unless such contract or some *memorandum or note* thereof, shall be in writing." Undertaking to give the same quotation in his first point, complainant's editor writes, "some *note or memorandum,*" and defendant's editor makes the very same transposition.

8. City of Buffalo v. Chadeayne, 31 N. E. 443.

The question in the case was as to defendant's right to erect wooden buildings within certain limits, where license or permission had been given by the common council. Complainant's point contains the expression, "buildings in existence and erected *by* such permission." An inexact and awkward form of expression, the more natural preposition to use being "with" or "under"; but defendant's editor uses the identical expression in his point. The opinion at least a dozen times speak of the building as erected "*with* the permission."

**9. Cudahy v. Rhinehardt, 31 N. E. 444.**

The opinion states as one of the grounds of decision that counsel on the argument was advised "that it would be presumed that the reversal was on the law only." There was no reason why this clause should be paraphrased when incorporated in the point, unless it might be condensed thereby. Complainant's editor, however, without effecting any condensation, paraphrases it thus: "that the reversal would be presumed to be on the law only." And defendant's editor paraphrases it in precisely the same words.

**10. Read v. Patterson, 31 N. E. 445.**

An important question in the case was decided by the circumstance that testator died and his will was probated, before section 1848 of the Code of Civil Procedure "*went into effect*," or "took effect," which is the language of the opinion. Complainant's editor says, "before the Code *was enacted*," which is quite a different thing, and defendant's point is inexact in precisely the same way.

**11. Campbell v. Forgy, 31 N. E. 454.**

The opinion quotes a statute which makes it the duty of the viewers "*to locate and mark* the highway on the best ground." Complainant's point quotes this, "*lay out and mark*," and defendant does likewise.

**12. Clark v. Clark, 31 N. E. 461.**

The opinion states that under the provisions of a certain statute "the husband, at the death of the wife, takes *one-third in fee* of the land," etc. Complainant's editor paraphrases this, "*one-third* of the fee," and defendant's editor does likewise.

**13. Balt. & O. R. R. v. Brant, 31 N. E. 464.**

The opinion reads, "Where the person or individual served resides within his county, or, like *conductors on railroads*, is constantly passing through it, the presumption," etc. Complainant got into his point the expression "*conductors of railroads*," which is not only an inexact quotation from the opinion, but incorrect as well, since the persons referred to certainly are not conductors "of railroads." Defendant's point has the very same inaccurate statement.

**14. Board of Commissioners v. Newlin, 31 N. E. 465.**

The opinion of the court reads: "The court [below] did right in permitting appellees to introduce in evidence the *certificate and estimates* of the engineer." Complainant's editor transposes the italicized words into "*estimates and certificate*," and, where the opinion says "the contract *provided for*" acceptance by the engineer, the headnote reads, "the contract *required*" such acceptance. Defendant's editor makes precisely the same changes.

**15. Bright v. Bright, 31 N. E. 470.**

The language in the points is very similar. Complainant's point contains the statement that defendant "furnished his son the money with which to purchase the land." The opinion does not warrant such a statement; but defendant's point contains the same statement, in identically the same words.

**16. Isler v. Jeffersonville, etc., R. Co., 31 N. E. 471.**

Both complainant's and defendant's points omit any reference to the holding of the opinion that complaint was bad on demurrer because it contained no averment that appellant was himself without fault. This was made quite prominent in the opinion, being discussed in a separate paragraph.

**17. Weigold v. Prass, 31 N. E. 472.**

The opinion says: "When defendant appears and joins issue under which he can make a defense, there is no necessity of the plaintiff making proof of de-

fendant's possession. Such proof is dispensed with by * * * section 1056."
Complainant's point gives as the language of the statute, "defendant makes de-
fense." The defendant quotes the statute in the same language.

18. Cross v. State, 31 N. E. 473.

The opinion reads, "The objection that," etc. "* * * is * * * of a tech-
nical character, for which we are forbidden by statute to *reverse a judgment*."
Defendant's point is a verbatim reproduction of complainant's, and both be-
gin, "It is no ground for a *new trial*," etc.

19. Abell v. Prairie City Township, 31 N. E. 477.

The opinion reads, "Section 7 requires the claimant to present a written re-
port to the township trustee, showing under oath" the number of sheep killed,
etc.
Complainant's editor paraphrases thus, "Provides that the claimant must
make a report in writing," etc. Defendant uses precisely the same paraphrase,
omitting the word "must."

20. Hollis v. Weston, 31 N. E. 483. ·

Defendant's point is practically a verbatim reproduction of complainant's,
and both contain the words "for another," which are superfluous, and not found
in the opinion.

21. People v. Stone, 31 N. E. 502.

The opinion begins, "This was an application for a judgment against certain
lands * * * for a delinquent *assessment*," etc.
Complainant's and defendant's editors both state that the judgment was for
"delinquent *taxes*."

22. Jaseph v. People's Savings Bank, 31 N. E. 524.

The opinion reads, "Plaintiff was entitled to judgment on the note, although
it failed to establish *its right to a foreclosure*."
Complainant's editor paraphrases thus, "to establish his rights under such
mortgage"; and defendant's editor uses the same paraphrase.

23. Frazier v. Myer, 31 N. E. 536.

A question as to the right to maintain gates. The following quotations are
found in the opinion: "—— allegations that * * * gates had been *placed*
across the way at each terminus thereof"; "—— the facts pleaded show that
the way is to be *closed* by gates to be opened only for the purpose," etc.; "——
private way *protected* by gates"; "—— a way *closed* by gates conveniently ar-
ranged for opening when necessary." There is no intimation anywhere in the
opinion that these were swinging gates. Complainant's point reads "—— the
way with gates *swung* at either end," and defendant's point also uses the words
"gates *swung* at either end."

24. Bement v. Claybrook, 31 N. E. 556.

Question as to a contract for the sale of standing timber, and evidence ad-
missible to show understanding of the parties as to the meaning of the words
"large trees," such evidence being found in a description of the character of
trees already removed under the contract. Both editors omit the important
circumstance that the trees were not only cut and removed, but were also paid
for and payment accepted, thus showing a meeting of the minds of the parties.

25. Brown v. Trexler, 31 N. E. 572.

Complainant's point contains the words "defects in *the record* and assign-
ment of errors," but no question as to the record was raised in the case. De-
fendant's point, however, contains the same words.

26. Russell v. Wellington, 31 N. E. 630.

The opinion uses the natural expression, "election may be held," and sometimes, "election may be had."

Complainant's point follows the opinion, using the phrase, "the election may be held." The point consists of eight lines, and defendant's editor has followed it closely in structure and language. He seems, however, to have felt the necessity for changing some of the words, and has done so, with the result that he uses the expression, "the election may be *made.*"

27. Pye v. Faxon, 31 N. E. 640.

The opinion reads, "Damages sustained by the plaintiff in consequence of some of her lodgers *leaving her house.*"

Complainant uses the extremely awkward paraphrase, "relinquishing their rooms"; and defendant's editor employs the same phrase.

28. Commonwealth v. Sullivan, 31 N. E. 647.

Complainant's point reads: "On a trial for illegally keeping liquor for sale, evidence that while defendant was *standing behind the bar* on his premises some one *in an outer room shouted,* apparently in his hearing, that the officers were coming. and that then defendant seized a bottle of whiskey, took it into the cellar, and destroyed it, is admissible in connection with other evidence showing defendant's guilt."

Defendant's point reads: "On a trial for illegally keeping intoxicating liquors for sale, evidence that while defendant *was behind his bar* some one *in an outer room shouted,* apparently in his hearing, that the officers were coming, and that defendant then seized a bottle of whisky, took it out of the room and destroyed it, is admissible in connection with other evidence tending to show defendant's guilt."

Neither complainant's nor defendant's editor got these dramatic incidents of standing "behind the bar" and of "some one shouting from another room" from the opinion: for all the opinion says on that point is, "While defendant is not bound by what was said by a stranger found on the premises, a remark made, apparently in his hearing, in reference to the approach of the officers. and his conduct in immediately grabbing a bottle of whisky and carrying it from the barroom and breaking it, may be considered," etc.

## NOTE NO. 3.

Double Column Exhibit C and CC (two volumes), volume 19, Southwestern Reporter. A few illustrative cases are here given:

1. Woodruff v. Eureka Springs, 19 S. W. 15.

Complainant's syllabus reads: "Land which adjoins a city, and has little value for *rural uses,* but has great value for prospective *urban purposes,* may be properly annexed to such city." Defendant's point adopts the original expressions, "rural purposes" and "urban purposes," where the opinion in several places reads "country uses," "city uses," but does not contain either of the words "rural" or "urban."

2. House v. Phelan, 19 S. W. 140.

Complainant's point states the substance of a section of the constitution which is nowhere found in the opinion, but which is found in a copyrighted footnote of the defendant. Defendant copies this statement, and both editors err in stating the point decided by the court.

3. O'Connor v. Smith, 19 S. W. 168.

Complainant's point refers to a delay caused by the company in failing to have a *survey* made for work, defendant paraphrasing this as "a delay caused by the failure of the company's engineer to have the necessary *surveys* made." There is nothing in the opinion about any surveys. The delayed matter is three times designated as "cross-sectioning."

4. Richardson v. Pavell, 19 S. W. 262.

Both editors, in stating the ground upon which the court found an estoppel, omit the statement that the deed of defendant through which plaintiff claimed title was one "with a general covenant of warranty," which was the sole ground of the decision.

5. McFadden v. Schill, 19 S. W. 368.

Both editors omit the material statement that one of the two defendants sued in trespass was not only to "do the grading," but also "procure right of way."

6. Hudgins v. Leggett, 19 S. W. 387.

Both editors state that the appeal was from an order. It was, in fact, from a decree.

7. Gunter v. City of Fayetteville, 19 S. W. 577.

Complainant's point reads: "No part of a specified territory can be annexed to a city without a public notice of the hearing, as prescribed, etc., even though a majority of the property holders of such territory voluntarily appear at the hearing and consent to the annexation." Defendant's point paraphrases: "Although a majority of the property holders in the territory to be annexed appear on the date fixed for a hearing and consent to the annexation."
It appears from the opinion that the fact was that a majority of the property holders appeared and "contested" the application for the annexation.

8. Bowman v. Branson, 19 S. W. 634.

Both editors fall into a common error in stating that certain notes would "not be due at the time of the trial," where the opinion reads that the notes "would not have become due when the suit was instituted."

9. State v. Ulrich, 19 S. W. 656.

Complainant's point reads, "On a trial for bigamy, the person whom the indictment charges to be defendant's lawful wife is incompetent, without defendant's consent, to testify against him." Defendant's point is nearly verbatim, and copies the phrase "without his consent," although it appears from the opinion that it was not a matter of consent at all, but that the rule was one based upon public policy, and nowhere intimates that defendant's consent would have made the wife a competent witness.

10. Michon v. Ayalla, 19 S. W. 878.

Complainant's point reads: "A deed conveying the grantor's right, title, and interest to an undivided part of certain land conveys her entire interest in such land." The defendant's point reads: "The deed of all the grantor's right, title, and interest to an undivided half of a tract conveys the grantor's entire interest in the tract."
It is perhaps needless to say that no such absurd proposition is found in the opinion.