[No. 216.    Decided July 8, 1891.]

THE BOARD OF HARBOR LINE COMMISSIONERS, W. F. PROSSER, EUGENE SEMPLE, FRANK H. RICHARDS, H. F. GARRETSON AND D. C. GUERNSEY v. THE STATE, *on the Relation of Henry L. Yesler.*

RIPARIAN RIGHTS — TIDE LANDS — WHARVES — HARBOR LINES — CONFLICT OF LAWS — PROHIBITION.

A riparian owner of lands, by reason of such ownership, can assert no valuable rights below the line of ordinary high tide, as against the state. The provision of the constitution (art. XVII, § 1), that no person shall be debarred from asserting his claim to vested rights in the courts of this state, applies only to some special right held

by a riparian owner by way of improvements made under express or implied license from the representative of the sovereign power, and not to any vested right incident to riparian ownership.

Where a riparian owner has no interest in tide land, but simply in a wharf upon the land, including the land under the wharf within the harbor lines authorized by the state is not such a taking or damaging of the wharf as will entitle the owner to compensation, nor does such action cast a cloud upon his title.

The rights of the state in tide lands are subject to the paramount right of the United States to regulate commerce and navigation; consequently, the United States, by its proper officers, is the only party that can interfere in case of state legislation being opposed to that of congress upon the subject of navigation and harbor lines; and, until the contrary appears, all such legislation must be presumed to be in the interest of commerce and navigation.

As the writ of prohibition will be granted only in a clear case, when no other remedy is available, the court is not authorized to grant it for the purpose of preventing the harbor commission from defining harbor lines.

*Appeal from Superior Court, King County.*

This is an appeal from the judgment of the superior court of King county, in a proceeding by the relator for a writ of prohibition against the respondents, by which judgment the motion of the respondents to quash the alternative writ of prohibition first issued having been treated as a demurrer to the affidavit upon which the application for the alternative writ had been granted, was overruled, and the writ of prohibition was made absolute.   The substance of the facts made to appear by that affidavit is, that the relator, a resident of the city of Seattle for upwards of thirty years, has during all that time been and still is the owner of certain upland property abutting upon the shore of Elliott Bay (the harbor of the city), and of the premises commonly known as the Yesler wharf and dock connected with and extending from said upland into the waters of the bay; that he erected said wharf and dock upwards of thirty years ago, at an expense exceeding $100,000, in aid of commerce and navigation, and down to June 6, 1889, maintained the

same for those purposes; that immediately after the great fire in said city of June 6, 1889, which destroyed said wharf and dock, he began rebuilding the same, and had rebuilt them at an expense exceeding $56,000, and still maintains the same as aids to commerce and navigation, in the promotion of which they have always been largely instrumental; that he has completed such rebuilding of the wharf and dock upon the faith of the protection afforded to him by the act of the legislature of the State of Washington, entitled "An act for the appraising and disposing of the tide and shore lands belonging to the State of Washington," approved March 26, 1890, and is entitled, under that act, to the right of priority of purchase of the shore lands occupied by said improvements; that the respondents, the board of harbor line commissioners of the state, are about to take final action in the locating and establishing of the harbor lines within the limits of the city of Seattle, and, as the relator is informed and believes, they propose, and are about to locate and establish such harbor lines in such a way as to include within such harbor lines his improvements above mentioned; that such extension of such harbor lines over said improvements is an attempt on the part of the board of harbor line commissioners to exercise unauthorized power, and to do an act which is not within their jurisdiction, and they have no authority or jurisdiction under the laws of the State of Washington, as the relator is advised and believes, to embrace or include within the harbor linest o be located and established in front of the city of Seattle, the wharves, docks or other improvements made therein; but that if the commissioners are *not prevented by a writ of prohibition* of the court from extending such harbor lines over said wharf and dock, and from filing the plat thereof in the office of the secretary of state, or the duplicate thereof in the office of the clerk of the city of Seattle, they will so extend the same and thus deprive him of the

use and benefit of his said wharf and dock, and cloud his title to the same in such a manner as greatly to embarrass and hinder the plaintiff in the legitimate use of his said property; and that the relator has no remedy at law or in equity except the writ of prohibition applied for. The writ was issued on October 28, 1890, and the judgment appealed from was entered on February 7, 1891.

*W. C. Jones,* Attorney-General, and *Eugene Semple,* for appellants.

*Thomas Burke,* and *J. C. Haines* (*Burke, Shepard & Woods,* of counsel), for appellee.

The opinion of the court was delivered by

HOYT, J.—The most important questions in this case are the same as those discussed and covered by the opinion in the case of *Eisenbach v. Hatfield, ante,* p. 236 (decided at the last session of this court). Yet in view of the immense interests involved in the principles therein announced we have again gladly listened to the able arguments of counsel made before us, and have carefully examined the exhaustive briefs filed, and again reviewed all of the questions decided in the case above cited; and it is only necessary for me to say that the opinion of the court has not been changed by such re-examination. The court is still of the opinion that, as against the state, a littoral owner, simply as such owner, can assert no valuable rights below the line of ordinary high tide.

The somewhat careful examination which I have given this case has confirmed my opinion that at common law the sovereign power (resting in England in parliament) could take such lands without compensation, and absolutely exclude the littoral proprietors from any rights thereto. In fact, such is conceded to be the power of parliament by nearly all of the courts. Even those which have taken

the strongest ground against the doctrine of the case above cited have admitted such to be the rule.    Note the argument of Chancellor Zabriskie in his dissenting opinion, *Stevens v. Railroad Co.*, 34 N. J. Law, 554 (3 Am. Rep. 269). While conceding this, they say parliament has this power because it is all-powerful, and can legislate as it pleases. This is true, but why is it true?   Simply because in it is embodied the sovereign power.   In my opinion, the same power vested in parliament and king in England is here vested in the people, who are fully as much sovereign here as parliament and king there.    Here the people of a state are absolutely sovereign, except as controlled by the constitution of the United States; and I do not think that it can be successfully contended that the powers of the people of the states have been thus controlled as to the questions here involved.    I am unable to find any clause of the constitution of the United States looking to such control, and, as I read the decisions of the United States supreme court, it has expressly decided that the states are in no wise controlled in this matter.

Acting within their sovereign power, as above recognized, the people of this state, in forming a constitution, saw fit to assert the title of the state to the lands in question, and having done so they are the only power that can interfere with such title.   But it is said that, while such assertion of title is made in the constitution, it is so made subject to vested rights of the riparian owner to be asserted in the courts.    I am of the opinion that this vested right cannot be held to be such as is incident to the riparian owner simply as such, but must be held to apply only to some special right held by such owner by way of improvements made under express or implied license from the representative of the sovereign power.    To hold that the former was intended, would practically destroy the title of the state, and would, therefore, be inconsistent with the as-

sertion of such title; while the latter construction will give force to every word, and make the provision in its entirety a consistent one. When the people say that they assert the state's title, it must be held to mean the entire and exclusive title. Of course the rights of the state, as above stated, are subject to the paramount right of the United States to regulate commerce and navigation, as to which I shall say a word later on.

The doctrine of the case of *Eisenbach v. Hatfield,* above cited, must obtain, and under it the rights of the parties hereto must be determined. It will thus be seen that the petitioner has no rights to the land in controversy, and at the most the only vested right he has is in the wharf constructed thereon; and for the purposes of this case, I shall assume (though we do not now decide that question) that the petitioner has such a right in such wharf that it could only be taken from him after compensation paid therefor. But will this right aid him in this controversy? Will the fact that he has a right to be compensated for his said improvements allow him to prevent the carrying out of a great state policy in the establishment of harbor lines? Can it be contended that this work must stop, or that the line must be laid around the several wharves which have been erected by riparian owners? I think all these questions must be answered in the negative. The riparian proprietor, as we have seen, has no interest in the land, but simply in the wharf on the land; and, this being so, it cannot be said that simply including the land under the wharf within the harbor lines is such a taking or damaging of the wharf as will entitle the owner to compensation. It does not follow from such including within the harbor line that the state has or ever will interfere with his ownership or possession of said wharf. If his property is neither taken nor damaged, the only ground upon which he can ask the interposition of the courts is, that a cloud is about to be

cast upon his title.   Upon this question I am of the opinion that his title is not of a nature to be clouded, being only a right to the structure upon the land without any right in the land itself.   But, even if it were, the proceedings complained of could constitute no cloud thereon, for, if the contention of petitioner is correct, the harbor line commission could not lawfully act until legislation had been had, providing a method by which the vested rights of all riparian owners who had wharfed out could be protected; and if this is so, then their want of authority to act is known to every one, and must be held to be apparent from the face of the proceedings, and therefore their acts could not constitute a cloud.   If, on the other hand, they have authority to act at all in advance of such legislation, they must be held to have authority to lay their lines across the wharf of petitioner, and all others similarly situated.

I think that the argument of counsel, that this legislation is opposed to that of congress enacted upon the subject of navigation and harbor lines, cannot be sustained.   All such legislation must be presumed to be in the interest of commerce and navigation until the contrary appears.   Besides, the United States, by its proper officers, is the only party that could interfere in such a case.

The extraordinary writ of prohibition should only be granted in a clear case, and when no other remedy is available; and I am of the opinion that petitioner has no cause of complaint; and, if he has, I am not satisfied that the ordinary proceedings in law or equity will not ultimately completely protect his rights.

The judgment must be reversed, and the cause remanded with instructions to dismiss the petition.

ANDERS, C. J., and SCOTT and DUNBAR, JJ., concur.

STILES, J.—I concur in the disposition of this case, as I look upon the threatened action of the board of harbor

line commissioners in the filing of a map of the harbor line of the city of Seattle as a clearly legitimate exercise of the power of the state to regulate and control the harbors within its limits to the extent of fixing the point beyond which wharves must not extend. In *Com. v. Alger,* 7 Cush. 53, the like action was upheld, although the soil beneath the wharf complained of was the property of the appellant in fee under the Massachusetts ordinance of 1647. As to the consequences which may follow through the action of the tide land commissioners, I think them too remote for adjustment or discussion in the present proceedings.