[No. 339. Decided March 2, 1892.]

THE STATE OF WASHINGTON, *on the relation of The Stimson Mill Company, Respondent,* v. BOARD OF HARBOR LINE COMMISSIONERS, W. F. PROSSER, EUGENE SEMPLE, FRANK H. RICHARDS, H. F. GARLETSON AND D. C. GUERNSEY, *Appellants.*

HARBOR LINE COMMISSIONERS—JURISDICTION—NAVIGABLE WATERS—
TOWNS.

The board of harbor line commissioners has jurisdiction over the waters of Salmon Bay, although the outlet to said bay becomes almost dry at low tide, inasmuch as said bay and outlet are navigable at high tide to boats of the class which do nearly all the transportation of freight and passengers on Puget Sound.

The board of harbor line commissioners is authorized, under art. 15, § 1, of the Constitution, to establish harbor lines in front of towns as well as cities, as it is evident from the connection in which the word "cities" is used, that the constitution makers intended to include towns thereunder.

*Appeal from Superior Court, King County.*

Application for a writ of prohibition on the relation of the Stimson Mill Company against the board of harbor line commissioners to prevent their locating harbor lines in and about Salmon Bay. From a judgment overruling a demurrer to the affidavit upon which the application for the alternative writ was made, the defendants appeal.

*Wiley, Hale & Scott,* and *Eugene Semple,* for appellants.

*Thomas Burke* (*Burke, Shepard & Woods,* of counsel), for respondent.

The opinion of the court was delivered by

Hoyt, J.—The more important questions presented by this record are the same as those decided by this court in the case of *Harbor Line Commissioners v. State,* 2 Wash. 530 (27 Pac. Rep. 550). They are of such importance to the welfare of the state that, notwithstanding that fact we should be willing to re-examine them had not said case been appealed to the supreme court of the United States, where a speedy and final determination thereof will be had; but as such is the case, a further discussion of said questions here would be of little value. We shall, therefore, content ourselves with an examination of the questions presented by this record, which are different from those decided in that case. One of these is purely a question of fact. It is claimed by the respondent that the affidavit which was the foundation of the proceeding showed that the appellants were about to include within the harbor lines to be established by them portions of its upland property, and that for that reason,

if for no other, the court below rightfully granted the writ. There are some expressions in said affidavit which tend to support this contention, but when we take it altogether and construe it as we think we ought, most strongly against the party presenting it, it fails to sustain this contention of respondent. And even if there were some statements therein which might be construed as thus contended, we do not think they should control the decision of this case in the face of the statement by appellants that they concede that they have no power to include said property within such harbor lines. Beside, under the decision in the case above cited, the attempt to include even portions of the upland within the harbor line could not be prevented by the writ of prohibition.

The next question is one of mixed fact and law. The facts, however, are not made to appear from the affidavit, or other portions of the record, and if before this court at all, are here by agreement of counsel upon the argument, or by the judicial notice which this court must take of Salmon Bay. If we consider them properly before us, it appears that said bay has only a narrow mouth or outlet, which goes dry or nearly dry at low water, at which time the water in the bay covers only a limited portion thereof in the shape of an enclosed lake in the center. At high water, however, said bay and such outlet are navigable to boats of the class which do nearly all the transportation of freight and passengers on the entire Puget Sound.

Under these circumstances we think a fair construction of the constitutional and legislative provisions upon the subject authorizes the harbor line commissioners to extend their jurisdiction over the waters in said bay. If we were to hold that because said bay was not navigable at low water it did not come within the definition of "navigable waters" as defined by the constitution and legislation relative to the duties of the harbor line commissioners, the

usefulness of that body would be very much interfered
with.    If it is not navigable for the reasons stated, it would
follow that the navigable portion of any of the waters of
the sound extended only to low water. Such, at least,
seems to us the necessary result of such a holding, and if
we were to hold this latter proposition to be true, the
board of harbor line commissioners had better be dis-
solved at once.

The other new question presented is as to the jurisdiction
of said board to establish harbor lines in navigable waters
in front of a town as distinguished from city.    It is con-
ceded that Ballard, in front of which the proposed line was
about to be established, is an incorporated town, but that
it is not a city within the restricted and technical meaning
of such word.    Upon these facts it is contended by re-
spondent that said board have no right to establish harbor
lines in front thereof; its contention in this regard being
that the constitution has only provided for the jurisdiction
of said board in front of cities.    This contention is denied
by appellants, and we are, therefore, called upon to examine
the question.    If the only expression in the constitution
was that in the first section of article 15, there would be
much force in the argument presented by the respondent;
but when such section is construed in the light of § 3 of
said article, and of other provisions of the constitution, it
seems to us that this narrow and technical construction of
the word "city" cannot be sustained.    Said § 3 is certainly
broad enough to cover towns as well as cities, and we think
that the language thereof, having been used in immediate
connection with that in which the word "city" occurs,
shows clearly the intention of the constitution makers to
broaden the definition of said word so that it might include
towns.    And we cannot agree with the contention of the
respondent that it will follow that such word would also
include a county or school district.    For while it is true

that in a certain sense these may be municipal corpora-
tions, yet they are not such in the same sense that cities
and towns are.   Beside, said § 3 clearly shows that the
municipal corporations there referred to are only those
which have power to lay out streets.  In the legislation had
upon the subject under such constitutional provisions it
is manifest that the legislature intended that the jurisdic-
tion of said board should extend to the waters in front of
towns as well as cities.   This is evident from the whole
scope of the legislation, and it is not necessary to point out
the particular clauses which tend to show such intention.

To hold that the constitution makers and the legislature
intended to draw the line strictly as between cities and
towns as technically understood, would be to convict them
of an absurdity.   Under the system for the creation of
municipal corporations existing in most of the states of the
union, there was no well defined line of demarcation as
between cities as such and towns.   Under such system the
nature of the charter of a municipal corporation did not
depend upon the number of inhabitants thereof, but upon
the will of the legislature, which usually reflected the choice
of the people of such corporation; and it was not an infre-
quent·occurrence to find a body of people governed by a
charter conferring all the powers of a city in the strictest
sense, while in the immediate vicinity might be found an-
other body of people of double the number, whose charter
of incorporation conferred only such powers as were usually
incident to towns, so that if the strict and technical inter-
pretation of these words as used before the constitution
was adopted should obtain, and it be held that the harbor
line commissioners had authority in relation to cities, but
did not have as to towns, it might happen that their juris-
diction would extend in one case over a certain body of
people as a municipal corporation, while in another and
similar case a body of people much larger would be de-

prived of the protection of such board.   It seems so clear to us that the word "city" cannot be construed as contended for by the respondent, that we shall say nothing further on the subject.   We would cite, however, two cases which, although not exactly in point in all respects, seem to us to be decisive of the principle involved in this case.   *People v. Stephens*, 62 Cal. 236; *Van Riper v. Parsons*, 40 N. J. Law, 4.

It will be seen from the above discussion that the new points presented by this record are not sufficient to take this case out of the rule announced in the case of *Harbor Line Commissioners v. State*, above cited.

The judgment of the court below must be reversed, and the cause remanded with instructions to dismiss the proceeding.

ANDERS, C. J., and DUNBAR and SCOTT, JJ., concur.

STILES, J., concurs in the result.