[No. 4009. Decided March 12, 1902.]

DANIEL SULLIVAN, *Appellant,* v. S. A. CALLVERT, *as Commissioner of Public Lands, Respondent.*

TIDE LANDS — SALE — APPRAISEMENT OF IMPROVEMENTS.

On the sale of tide lands of the second class, belonging to the state, upon which there are improvements belonging to an individual, the owner of such improvements, although having lost a preference right of purchase, is entitled to have his improvements separately appraised and the land offered in parcels not exceeding 160 acres in size, but divided into tracts with reference to his improvements, under Laws 1897, p. 253, § 51, which requires tide lands of this class to be sold on the terms provided for the sale of school and granted lands; and under Laws 1897, p. 252, § 48, as amended by Laws 1899, p. 138, which requires the sale of tide lands to be made in the same manner as school and granted lands, which by Laws 1897, p. 235, § 11, is restricted to parcels not exceeding 160 acres; and under Laws 1897, p. 236, § 12, which provides that in every appraisement

the board of appraisers shall separately appraise all improvements placed upon any lands of the state, and that if the purchaser is not the owner of the improvements he shall deposit with the state treasurer the appraised value of such improvements, which shall be paid over to the owner of the improvements if he does not hold or claim the land adversely to the state.

SAME — SALE OF UNIMPROVED TIDE LANDS — SIZE OF PARCELS.

Unimproved tide lands are not required to be divided into quantities not exceeding 160 acres, when offered for sale by the state land commissioner.

Appeal from Superior Court, Skagit County.—Hon. GEORGE A. JOINER, Judge. Reversed.

*Million & Houser,* for appellant.

*W. B. Stratton,* Attorney General, and *Henry McBride,* for respondent.

The opinion of the court was delivered by

WHITE, J.—This action was brought for the purpose of enjoining respondent, as commissioner of public lands, from issuing to one J. B. McMillan, or the Union Boom Company, a contract for certain tide lands of the second class, lying at and adjacent to the mouth of the Samish river, in Skagit county. The sale had been made by the county auditor of said county, and was pending approval by the state land commissioner when appellant instituted this action to enjoin the issuance of a contract under the sale. A temporary restraining order was issued at the time of the commencement of the action, without notice, and a date fixed by the court for the hearing of an application for a temporary injunction. On the day set for the hearing of the application for a temporary injunction, respondent appeared and filed a general demurrer to the appellant's complaint, which was sustained by the court; and, appellant electing to stand on his complaint, judgment of

dismissal was entered in favor of respondent, from which action of the trial court appellant appeals to this court, and assigns as error the action of the lower court in sustaining the demurrer to the complaint, and the dismissal of the action.

The complaint was drawn on the theory that the property of appellant in the warehouses mentioned therein was being taken through the alleged sale of tide lands, and the contemplated action of respondent in issuing the contract to others based thereon in violation of the rights of respondent under the law in relation thereto. The complaint was filed April 15, 1901, and, omitting formal averments, in substance it alleged that the appellant is the owner and in possession of lots 8, 9, and 10, section 5, township 36 N., range 3 E., W. M.; that this land had a water frontage on the waters of Puget Sound; that tide lands abut upon and lie in front of the same; that the appellant prior to the year 1890 improved the tide lands in front of his land by erecting two warehouses thereon, of the aggregate value of $1,100, and ever since has maintained and used these warehouses in the shipping of grain and produce; that on the 13th of April, 1901, the auditor of Skagit county, by virtue of an order issued by the board of land commissioners, offered for sale and sold to one J. B. McMillan, or the Union Boom Company, the said tide lands; that a return has been made of such sale to the board of land commissioners for confirmation, and to have a contract for the same issued to the said purchaser under the law in regard to the sale of tide lands of the second class. It is alleged that the law for the sale of the tide lands was not complied with, in this: that the improvements of the appellant on said tide lands were never appraised prior to the sale or at all; that said tide lands were not offered for sale in tracts not exceeding 160 acres,

but were offered for sale in an entire body, without division into tracts; that the said tide lands were advertised to be sold in an entire body, by designating the same according to the number of chains on the meander line; that on the day of sale the appellant appeared at the place of sale and protested against the sale, and demanded that the lands be properly appraised and offered for sale and advertised, and that the improvements thereon be appraised before such sale; that the auditor, under the instructions and direction of the respondent, ignored said protest and demand. The appellant alleges that he has suffered irreparable damages by reason of the pretended sale of said tide lands in the illegal manner in which they were sold; that he desired to, and was willing to, become a purchaser of all of said tide lands lying in front of his said lands, had he been permitted to bid on the same in separate tracts or parcels, and was damaged in not having his improvements appraised before said sale; that he will be prevented from obtaining the value of his improvements if effect is given to such sale by the issuance of a contract based thereon. Appellant further alleges that the action is brought for injunctive relief for the reason that he has no adequate remedy at law; that he has no appeal from the action of the respondent in making sale, or any steps leading up to or preceding the same; that the act entitled "An act providing for appeals from the board of state land commissioners in matters pertaining to the sale of tide lands," approved March 8, 1901 (Laws 1901, p. 98), will not go into effect until the 12th day of June, 1901, and by said act the right of appeal in pending proceedings does not accrue until the act goes into effect; that, if the court should decide that the right of appeal exists under said act, the appellant will perfect an appeal, but, in case the court should decide that no appeal would lie under said act,

then the appellant claims relief as prayed for, for the reason that he has no adequate remedy at law or by appeal.

We say in a recent case,—*Washougal & L. Transp. Co. v. Dalles, P. & A. Nav. Co., ante,* p. 490 (68 Pac. 74),—that

"The title to all tide and shore lands passed to the state at the time of its admission into the Union. From thenceforward the state had the sole and absolute right and power of disposition over such lands, and it could, either in its fundamental law, or by statutory enactment, provide for their disposition."

It is not contended that the land covered by the improvements mentioned in the complaint was patented by the United States to the appellant or his grantors prior to the admission of the state. With the exception of such patented lands, all lands covered by the ebb and flow of the tide below the line of ordinary high tide are tide lands, the title of which is in the state. The erection of buildings on such land did not vest in the owner of the building any title or interest in the land covered by the buildings. In erecting the buildings he was trespassing upon the property of the state, or on property held in trust for the state, if the buildings were erected before the admission of the state into the Union. The state had the right to treat him as a trespasser, or to give him a preference right to purchase the land improved, and it might also provide for paying him for such improvements. The state has seen fit to treat improvers of the tide land, actually using the same for commerce, trade, or business, not as trespassers, but as having equities in the improvements, and rights prior to other citizens in acquiring title from the state to tide lands covered by such improvements. These acts of grace on the part of the state do not, however, vest in the improver any estate in the land; and, if he desires to avail himself

of the benefits bestowed, he must do so under the law be-
stowing such benefits. *Eisenbach v. Hatfield,* 2 Wash.
236 (26 Pac. 538, 12 L. R. A. 632); *Harbor Line Com'rs
v. State,* 2 Wash. 530 (27 Pac. 550); *Shively v. Bowlby,*
152 U. S. 1 (14 Sup. Ct. 548). The act approved March
26, 1890, relative to appraising and disposing of tide and
shore lands, divides tide lands into three classes, and de-
fines tide lands of the second class as "all tide lands situ-
ated at a greater distance than two miles from either side
of an incorporated city or town, and upon which are lo-
cated valuable improvements." (Laws 1889-90, p. 431,
§ 4). Under that act such lands could only be surveyed
and appraised upon application of the owner of said im-
provements. When appraised, improvements were ex-
cluded from the valuation, and after the filing of the final
appraisal the owner of the improvements had the exclusive
right to purchase for the period of sixty days. The owners
of lands abutting on tide lands, and the grantees of such
abutting owners, were also given a preference right, within
a limited time, to purchase such tide lands. This act re-
mained in force until March 26, 1895. During this period
appellant had the exclusive right to cause the land upon
which his improvements were located to be surveyed and
appraised, and after appraisal the exclusive right for
sixty days to become the purchaser at the appraised value.
At any time during this period he had the sole right
to become the purchaser of the land without paying
anything for the improvements. The act of March
26, 1890, was repealed by the act approved March 26, 1895
(Laws 1895, p. 527). Under the classification provided
for in the act of 1895, the lands in question fell in the
second class. If valuable improvements made prior to
March 26, 1890, were in actual use for commerce, trade, or
business, under the last-mentioned act, the owner of such

improvements had the exclusive right to become the purchaser of the land upon which he had made improvements, with other and adjoining land sufficient for the reasonable use and enjoyment of said improvements, at a price fixed by statute up to January 1, 1896. It was also provided in said act that any person who should after March 1, 1896, occupy, use, or enjoy any of the tide or shore lands of the state, unless he should have an application to purchase the same pending, should be liable to the state for the reasonable rental value of the land and premises so occupied, used, and enjoyed. The act of 1895 was repealed by the act of March 16, 1897 (Laws 1897, p. 229). Under the act of 1897 tide lands are divided into two classes, instead of into three, as under the acts of 1890 and 1895. What was the second class under the former acts is eliminated from the act of 1897. Under the act of 1897 (§ 48), appellant could have become the purchaser of the land upon which his improvements are situated, at $5 per linear chain, measured on the United States meander line bounding the inner shore limit of such tide lands. And under § 55 he had a preference right to purchase until July 1, 1897. Section 48 was amended in 1899 (Laws 1899, p. 138) so as to require the sale to be made in the same manner as school and granted lands, and to be sold at not less than $5 per linear chain, measured on the United States meander line bounding the inner shore limit of such tide land. At any time from March 26, 1890, up to July 1, 1897, appellant had the preference right to purchase the land covered by his warehouses, and since that time, and up to the date of the sale, he had an equal right with any one else to purchase; and it is said by the respondent that, if he now loses his buildings, it is because of his own neglect. But why should the state, if the improver is negligent or not entitled to the improvements, lose the value

of the improvements? The statute, in fixing the purchase price of tide land at $5 per linear chain, had reference to the land as land. Improvements were to be paid for independently of the price of the land per linear chain. Section 51 of the act of 1897 requires tide and shore lands of this class to be sold on the terms provided for the sale of school and granted lands; and the act of 1899, amending § 48 of the act of 1897, requires the sale to be made and the lands sold in the same manner as school and granted lands, at not less than $5 per linear chain, etc. It is manifest from § 51 of the act of 1897, and the amendment to § 48 of that act in 1899, that it was the intention of the legislature that the same means resorted to by an applicant to purchase school lands, and the same terms upon which he was allowed to purchase the same, and the steps leading up to such purchase, should be followed in perfecting a sale of tide lands, of the class mentioned in the complaint, as in perfecting a sale of school lands. The act of 1897 provides that the board of state land commissioners shall be a board of appraisers for the purpose of selecting and appraising, selling or leasing, school, granted, and other lands, etc. It further provides that the word "improvements," when referring to school or granted lands, shall be interpreted to mean the fencing, diking, etc., and when referring to tide or school lands or harbor areas, the word "improvements" shall be interpreted to mean all structures erected or commenced on said lands, or actually in use for the purpose of trade, business, commerce, or residence prior to March 26, 1890, and completed before January 1, 1891, excluding from the meaning of the term ordinary capped piles or similar structures. § 5. The act further provides that any person may make written application to the board of appraisers for the appraisement and sale of "any lands" belonging to the state; that when,

in the judgment of the board of appraisers or the commissioner of public lands, a sufficient number of applications have been received for the appraisement and sale of any lands belonging to the state, the commissioner of public lands shall cause any of the lands applied for to be inspected and appraised as to their character, topography, agriculture, timber, coal, mineral, or rock quarries, or grazing, their distance from city, town, railroad, river, irrigation ditch, or other water ways, together with the commissioner's or appraiser's judgment as to their present and prospective value, all of which is to be reported on, and to be considered in fixing a price per acre for each quarter section and subdivision thereof, or lots or blocks. The price is not to be less than $10 per acre for lands granted for educational purposes. No more than 160 acres of any school or granted lands shall be offered for sale in one parcel. § 11. The act defines the meaning of the term "granted lands," and under the act this term does not include tide lands. § 4. The terms "public lands" and "state lands," under the act, include tide lands. § 5. Section 12 of the act provides that in every appraisement the board of appraisers shall separately appraise all "improvements" placed upon "any lands of the state," and found on such land at the time of the appraisement. This section deals with public lands and with granted lands, and the term "any lands of the state," as used in the section, is equivalent to the term "public lands of the state." The act further provides for deducting damages and waste, for timber, stone, etc., removed from the land, from the value of the improvements. The act provides for a record of all appraisements. The act also provides that, if the purchaser is not the owner of the improvements, he shall deposit with the state treasurer, through the board of appraisers, within thirty days after the sale, the appraised value

of such improvements. It provides that, if the board finds that the owner of the improvements was not holding or claiming the land adversely to the state, the board of appraisers shall direct the state treasurer to pay, and he shall pay, to the owner of the improvements, the sum deposited by the purchaser. If the board finds that the improvements were made by parties holding or claiming the land adversely to the state, or by persons without license or lease from the state, etc., then the board shall direct the state treasurer to pay over such sum so deposited into the permanent school fund. We think that under § 51 of the act of 1897, and the amendment of 1899 to § 48 of the act of 1897, improvements on the tide lands mentioned in the complaint should have been appraised before the land was advertised for sale, as provided in § 12 of the act of 1897 for the appraisement of improvements. From the complaint it affirmatively appears that the appellant does not claim the land on which the improvements stand, adversely to the state. The occupancy and use of the improvements by the appellant is in effect the same as if under a license from the state. It is distinctly averred that there has been no appraisement of these improvements, and that the respondent sold the land without such appraisement, and in a large body, without division into tracts. While we do not think that tide land is required to be sold in tracts of not more than 160 acres, we do think that, under the act, tide lands having improvements thereon, such as the improvements mentioned in the complaint, are to be divided, in case of sale, into tracts with reference to such improvements, and so sold, so that the purchaser may be able to buy not only the land covered by the improvements, but unoccupied and unimproved tide lands adjoining such improvements, necessary for the convenient use and enjoyment of such improvements. This

is the rule specifically applicable under the act to tide lands of the first class, and we see no reason why it should not apply to tide lands of the second class situated as in this case. The state has all along recognized that the improver, when not claiming the land adversely to the state, is the owner of the improvements, and is entitled to receive the value thereof from a stranger who purchases the land. If the land is divided into tracts with reference to the improvements, the owner of the improvements has an opportunity of purchasing the land covered by his improvements, and necessary to the use thereof, without being required to purchase great areas of tide lands for which he has no use. We think the appellant, so far as the complaint discloses, has an interest in the improvements, and is entitled to have them appraised, and to have the purchaser of the tide lands on which such improvements are situated pay the appraised value of the improvements into the state treasury for his use; that the tide lands cannot be sold in strict conformity with the law without the appraisement of the improvements, and, as the appellant seasonably protested against the sale without such an appraisement, equity should intervene to prevent the completion of the contract. The court erred, therefore, in sustaining the demurrer to the complaint.

The judgment of the court is reversed, and this action remanded for further proceedings in accordance with this opinion.

REAVIS, C. J., and FULLERTON, HADLEY, DUNBAR, ANDERS and MOUNT, JJ., concur.