[No. 4590.    Decided October 3, 1903.]

LAKE WHATCOM LOGGING COMPANY, *Appellant,* v. S. A. CALLVERT, *Commissioner of Public Lands, et al.,* . *Respondents.*[1]

TIDE LANDS SALES—IMPROVEMENTS—APPRAISEMENT—RAILROADS. A railroad across tide lands constructed on piles and trestle work is not an improvement entitling the owner to have the same appraised before sale of the tide lands, within the meaning of Laws of 1897, p. 231, defining improvements to be "fills of a permanent character and all structures used for trade, business, commerce or residence, excepting capped piles and similar structures or fixtures," since the statute contemplates structures which enhance the value of the land.

SAME—ACTION TO ANNUL SALE—EMINENT DOMAIN.    A state contract for the sale of tide lands made without appraisement of improvements will not be annulled at the suit of a common carrier, the owner of a railroad built on piles across the same, since the appraisement of the road as an improvement would compel the purchaser to pay its value without acquiring title to the materials composing it, and a right of way could subsequently be condemned upon paying the value of the land taken without regard to the value of the improvements thereon.

Appeal from a judgment of the superior court for Skagit county, Neterer, J., entered July 12, 1902, dismissing

[1]Reported in 73 Pac. 1128.

the action after sustaining a demurrer to the complaint. Affirmed.

*Dorr & Hadley,* for appellant.

*The Attorney General* and *Elihu R. Sherman,* for respondents.

FULLERTON, C. J.—In 1898 the respondent McMillan entered into a contract with the state of Washington, through its commissioner of public lands, for the purchase of certain tide lands to which the state had title, situated in Skagit county. This action was brought to set aside and annul the contract, and prevent its being further carried into execution by the parties thereto. A demurrer to the complaint was interposed and sustained, and this appeal is from a judgment of dismissal, entered after the appellant had elected to stand on its complaint and refused to plead further.

The gravamen of the complaint is found in the following paragraphs:

"3. That the plaintiff is the owner and in the possession of the following described real estate situate in Skagit county, state of Washington, to-wit: Lot one (1) of section 21, township 36 north, range three (3) east, W. M. And that said lands abut upon and have a water frontage on the waters of Puget Sound, and that tide lands of the second class abut and lie in front of said lands.

"4. That section sixteen (16) in said township and range adjoins said lands of plaintiff on the north and is school land belonging to the state of Washington.

"5. That prior to the 26th day of March, 1890, plaintiff's grantors, being the then owners of said lot one in section 21, aforesaid, built and constructed a line of railroad over and across said lot and over and across a small portion of the southwest corner of said section sixteen (16) and improved the tide lands in front of said section 16 by continuing said railroad and erecting and constructing

a line of railroad over and across said tide lands, said railroad being constructed on piles and trestle work from the high water line in front of said section to deep·water in the waters of said Puget Sound, said improvements being of the aggregate value of four· thousand dollars, and that plaintiff's grantors and this plaintiff, as their successor in interest, have ever since maintained and used said railroad and structure in the transportation and shipping of logs and timber products and other freight from said uplands to deep water in said Puget Sound.

"6.  That on the ——— day of ———, 189——, the auditor of Skagit county, Washington, by virtue of an order by the board of land commissioners of the state of Washington, offered for sale and sold to the defendant J. B. McMillan, all the tide lands of the second class owned by the state of Washington, situate in front of, adjacent to, or abutting upon that portion of the United States government meander line described as follows: [describing it.]  And that  said lands so sold included the tide lands in front of the upland belonging to plaintiff aforesaid and also all the tide land upon which the improvements belonging to the plaintiff are situate as aforesaid, and that a return has been made of such sale to the said board of land commissioners for confirmation, and that on the 13th day of September, 1898, a contract for the purchase of said lands was issued by one Robert Bridges, the then commissioner of public lands of the state of Washington, a predecessor in office of the said defendant S. A. Callvert, to the said defendant J. B. McMillan.

"8.  That this plaintiff is now, and it and its grantors have been, continuously ever since prior to the 26th day of March, 1890, the owners of said improvements placed upon said tide lands as aforesaid, and have maintained and used the same for purposes of trade and commerce.

"9.  Plaintiff further alleges that the said pretended sale by the said auditor of Skagit county to said defendant McMillan, and the issuance of a contract of purchase of said tide lands to him by the commissioner of public lands

of the state of Washington, was illegal, void and of no effect, for the reason that the law for the sale of said tide land as provided by the statutes of the state of Washington, was not complied with in making such sale, in that the improvements belonging to the plaintiff and his grantors on said tide lands, were never appraised prior to said sale, or at all, and that said tide lands were advertised to be sold in an entire body, the same being designated according to the number of chains on the meander line upon which said tide lands abutted, and the plaintiff or its grantors had no opportunity to bid for or purchase that portion of the tide lands upon which the improvements aforesaid were situated and which was necessary for use in connection therewith for the purposes of trade and commerce."

In *Sullivan v. Callvert,* 27 Wash. 600, 68 Pac. 363, in an opinion by Judge WHITE, we took occasion to review somewhat exhaustively the legislation on the subject, and held that, on the sale of tide lands of the second class belonging to the state, upon which there are improvements belonging to an individual, the construction of which was completed prior to March 26, 1890, or commenced prior to that date, and completed before January 1, 1891, the owner of such improvements was entitled to have the same appraised, and the appraised value thereof paid into the state treasury for his use; that such tide lands could not be sold in conformity with law without such appraisement; and that, if the owner of the improvements seasonably protests against a sale attempted to be made without such an appraisement, equity will intervene to prevent the completion of the contract.   As the appellant alleges that it constructed its railroad across these tide lands prior to March 26th, 1890, it is plain that it has brought itself within the principle of this case, if such railroad is an improvement of the tide land, within the

meaning of that phrase as used in the statute, and its ac-tion has been seasonably commenced.

Is the appellant's road an improvement, within the meaning of the statute? We are of the opinion it is not. The statute in force when the contract of sale between the respondent McMillan and the state was entered into, and which confers upon the owners of improvements constructed upon the state's public lands the right to demand an appraisement of the same, defined that term as follows:

"When referring to tide or shore lands and harbor areas, the word 'improvements' shall be interpreted to mean all fills or made ground of a permanent character, and all structures erected or commenced on said lands or actually in use for purposes of trade, business, commerce or residence prior to March 26, 1890, and completed before January 1, 1891: Provided, That ordinary capped piles or similar structures or fixtures shall not be considered an improvement." Laws 1897, p. 231, § 5.

It is evident from this definition that the statute contemplates by the word "improvement" a structure which will add value to the land, and which will be of use and benefit to the purchaser as owner of the land. The things enumerated as constituting improvements are all of this character. Fills and made ground of a permanent character tend to reclaim the land and fit it for use by the purchaser. A residence can be occupied by him, or let to the use of another. So also may structures, actually in use for the purposes of trade, business, or commerce. But a line of railroad track extending across the land, and terminating at each side thereof, cannot be of use as an improvement to the owner of the land, or tend in any way to enhance its value. The materials contained in it may be of some value, but structures valuable only for the mate-

rials they contain are clearly not "improvements," such as the statute contemplates.

But there is another reason why the demurrer was properly sustained. The respondent McMillan will not acquire title to the materials composing the appellant's road by the purchase of the land over which it crosses. If the allegations of its complaint be true, the appellant is a common carrier, possessing the power of eminent domain; and it can, after the respondent McMillan acquires the legal title to the land in question, condemn and acquire a right of way across it for its road, by paying the value of the land taken without regard to the improvements it has placed upon it. *Bellingham Bay & B. C. R. Co. v. Strand,* 14 Wash. 144, 44 Pac. 140, 46 Pac. 238; *Seattle & Montana R. Co. v. Corbett,* 22 Wash. 189, 60 Pac. 127. If, therefore, its improvements were such as added value to the land, it would be going too far to hold that the purchaser of the land should pay their value, when he can acquire no title to the same either by his purchase of the land or by such payment. This conclusion renders it unnecessary to discuss the question whether the action was seasonably commenced.

The judgment is affirmed.

DUNBAR, MOUNT, and HADLEY, JJ., concur.